ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL-
WAY COMPANY v. McKNIGHT ET AL., RAIL-
ROAD COMMISSIONERS OF THE STATE OF
ARKANSAS, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

No. 183. Argued May 2, 1917.—Decided June 4, 1917.

Where a carrier, by reason of temporary and permanent injunctions
against state officials and shippers and travellers as a class, collects
rates in excess of those fixed by law, the right of a person, who did
not appear, to sue for the excess paid by him during the restraint
revives when the final decree is reversed by this court and its man-
date is issued to dismiss the bill.

Viewed from the standpoint of equitable jurisdiction, a class bill to re-
strain all such persons from suing to recover their overpayments is not
maintainable as a bill to prevent multiplicity of suits, in the absence
of any controverted question of fact or law common to their claims.

In a suit to test the validity of rates fixed by the State of Arkansas, the
District Court, by injunction *péndente lite* and later by final decree,
enjoined the enforcement of the rates, and prohibited shippers and
travellers generally from suing the carrier for its failure to keep them
in effect. The decree having been reversed by this court and mandate
issued with directions to dismiss the bill, *Allen* v. *St. Louis, Iron
Mountain & Southern Ry. Co.*, 230 U. S. 553, *Held*, that thereafter
the District Court was without power to inquire into and assess the
damages sustained by shippers or travellers by reason of the tem-
porary and permanent injunctions, for the purpose of fixing liability
on the temporary injunction bonds, at least as to persons who did not
elect to appear and make claim; and that, therefore, a reference to
that end could afford no basis for an ancillary suit to enjoin such
persons from suing in the state court (after the dismissal of the orig-
inal bill) to recover excess rates collected by the carrier under the
temporary and permanent injunctions.

Rule 15 of the District Court for the Eastern District of Arkansas,
quoted in a footnote to the opinion, *infra*, 373, relates merely to
damages recoverable on bonds accompanying restraining orders
or temporary injunctions.

Damages arising from the restraints of a permanent injunction, afterwards reversed, are not recoverable on temporary injunction bonds (*Houghton* v. *Meyer,* 208 U. S. 149), particularly where the decree of permanent injunction expressly released further liability on the bonds.
220 Fed. Rep. 876, affirmed.

THE case is stated in the opinion.

*Mr. John M. Moore,* with whom *Mr. Edw. J. White* was on the briefs, for appellant.

*Mr. Allyn Smith* for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

On July 18, 1908, the St. Louis, Iron Mountain & Southern Railway Company filed in the Western Division of the Circuit (now District) Court of the United States for the Eastern District of Arkansas a bill against the Railroad Commissioners of that State to enjoin the enforcement of intrastate freight and passenger rates promulgated by them. Two private citizens, Leigh and McLean, who were alleged to be shippers and travellers on the railroad, were joined as defendants; and the bill prayed that they "and all other persons belonging to the same class, including all patrons" of the railroad, be enjoined from instituting any suits for penalties or double damages under the Arkansas statutes. On September 3, 1908, a temporary restraining order was granted which, besides enjoining the Railroad Commissioners from enforcing rates promulgated by them, ordered that the two private citizens "and all other persons and each of them from and after the time that they shall have knowledge of this order be enjoined from at any time instituting any such suit or action for or on account of any failure of the complainant to keep

in effect and observe said inhibited rates or for the re-
covery of damages by reason of such failure, during the
time this order shall continue in effect."

The Railway Company then executed, as ordered, a
bond with surety to the United States in the penal sum
of $200,000 "conditioned that the said complainant shall
keep a correct account, showing, as respects every car-
riage of passengers or freight, the difference between the
tariff actually charged and that which would have been
charged had the rate inhibited hereby been applied,
showing the particular carriage in question and the sta-
tions between which the same occurred, and the name of
the person affected as far as may be practicable, which
record shall be made and kept subject to the further order
of this Court, and further conditioned that if it should
eventually be decided that so much of this order as in-
hibits the enforcement of the existing rates should not
have been made, that said complainant, shall, within a
reasonable time, to be fixed by the Court, refund in every
instance to the party entitled thereto, the excess in charge
over what would have been charged had the inhibited
rates been applied, together with lawful interest and dam-
ages."

On June 23, 1909, an order was made for an additional
bond without surety in the sum of $800,000, which pro-
vided, among other things, for giving to each passenger or
shipper a receipt which would show the amount payable
under the enjoined rates.[1]

---

[1] The condition prescribed was: "that it shall, on and after July 1st,
1909, issue to each person purchasing a ticket or paying cash fare upon
the train from one point in the State of Arkansas to another point in
the same State, and confined exclusively to intrastate travel, a certif-
icate or coupon showing the amount paid by such passenger for such
ticket and the date thereof; and to every shipper or consignee when
paying freight on any commodity shipped from one part of the State
of Arkansas to another part and which is wholly the subject of intra-
state traffic, a receipt or freight bill, showing the amount charged for

On May 11, 1911, a final decree was entered for the Railway Company making permanent the injunction in the terms of the restraining order, and further ordering "that the bond for injunction filed by the complainant here be released and the sureties thereon discharged from liability." The decree was reversed by this court with directions to dismiss the bill without prejudice (*Allen v. St. Louis, Iron Mountain & Southern Ry. Co.*, 230 U. S. 553); and upon filing of the mandate in the District Court on July 18, 1913, this was done. But in the decree of dismissal the court "of its own motion, and against the objection of the complainant, refers, under rule 15 of this Court, the matter of damages alleged to have been sustained by the defendants, the Railroad Commission of the State of Arkansas, by reason of the granting of the temporary and permanent injunctions herein, to Jeremiah G. Wallace, Esq., who is hereby appointed a Special Master for the purpose of determining the damages sustained. That in determining these damages, for the recovery of which the said Commissioners are not acting for themselves but for the benefit of all persons, shippers, consignees and passengers, who have sustained any damages by reason of the granting of said injunctions, the Master is hereby authorized, for the purpose of ascertaining these facts, to examine witnesses, administer oaths, and call upon the plaintiff herein for any books or papers, or transcripts thereof, which, in his opinion, are necessary for the purpose of enabling him to determine any facts in issue in connection with any claim filed with him. . . .

"And the Master is further directed to give notice by publication . . . to the effect that all persons having any claims against the complainant by reason of the

the carriage of such freight, and also endorse on the same bill the amount or rate which would have been charged had the inhibited rate continued in force; which receipt or coupon or freight bill shall be prima facie evidence of the amount paid and the date of payment."

granting of the injunctions herein, shall present the same to him on or before the 1st day of November, 1913, by filing with him the evidence of their claims, or such other proof as they possess."

Thereafter Gallup brought suit in a state court of Arkansas to recover from the Railway Company the difference between the aggregate freight and passenger rates actually collected from him while the injunctions, temporary and permanent, were in force (that is, from September 3, 1908, to July 18, 1913), and the amount which would have been collected if the rates enjoined had been in effect. The Railway Company promptly filed, in the District Court, on leave granted what is called a "supplemental bill of complaint" to restrain Gallup from proceeding in the state court. Metcalf, another shipper, who had not brought suit, but who, it was alleged, was threatening to do so, was also made defendant as representative of the class; and claiming that the facts justified equitable interference on the ground of avoiding multiplicity of suits, an injunction was sought also against him and others similarly situated. The supplemental bill specifically alleged that by virtue of the decree of May 11, 1911, the Railway Company was released from all liability on the bonds or otherwise from any damage accruing from the injunctions.

Gallup and Metcalf each moved to dismiss the bill for want of equity. Gallup also answered, alleging, among other things, that the overcharges sought to be recovered were mainly those arising after the entry of the final decree in the District Court, and also that the aggregate of claims filed with the special master under the decree of July 18, 1913, greatly exceeded $1,000,000, the amount of the bonds. The District Court granted the prayer of the supplemental bill. Upon appeal by Gallup and Metcalf the Circuit Court of Appeals modified the decree "so as to restrain only such actions as are brought on one or

both of the bonds." From the decree as so modified, the Railway Company appealed to this court.

The Railway Company rests its claim to relief upon two grounds:

*First:* That the District Court assumed by the decree of July 18, 1913, jurisdiction to determine all claims arising out of overcharges, so that the commencement by Gallup of suit in the state court was an interference with its jurisdiction.

*Second:* That in view of the number and character of the claims of other shippers and travellers, equity should intervene to prevent multiplicity of suits.

It may be doubted whether, in view of the mandate, there was any power in the District Court to order reference to the master to determine the liability on the bonds; but on this question we are not required to express an opinion.[1] For it is clear that even if such power existed it could extend only to such shippers and travellers as elected to file their claims with the master. The order referring the determination of claims for damages to a special master was declared to be "under Rule 15."[2]

---

[1] In *In re Louisville*, 231 U. S. 639, 645, and *Louisville* v. *Cumberland Telephone & Telegraph Co.*, 231 U. S. 652, where it was held that the District Court had discretion to authorize further proceedings, the mandate ordered that the decree be "reversed with costs, without prejudice," and remanded "for further proceedings not inconsistent with the opinion of this court"; while in the instant case the mandate ordered that the decree be "reversed with costs" and remanded "with directions to dismiss the bill." See also *St. Louis & San Francisco Railroad* v. *Barker*, 210 Fed. Rep. 902; *Ex parte Dubuque & Pacific Railroad*, 1 Wall. 69; *Durant* v. *Essex Co.*, 101 U. S. 555; *Mackall* v. *Richards*, 116 U. S. 45, 47; *In re Washington & Georgetown R. Co.*, 140 U. S. 91, 97; *In re Potts*, 166 U. S. 263; *Evens & Howard Fire Brick Co.* v. *United States*, 236 U. S. 210.

[2] Rule 15 is as follows: "In all cases in which an injunction has been granted, and a bond executed by the complainants, damages sustained by the party enjoined, *in case the injunction is dissolved,* may be assessed in the same proceeding, either by the court or by reference to a master,

That rule relates to damages recoverable on bonds given when a restraining order or temporary injunction is issued. Damages arising between May 11, 1911 (the date of the decree granting the permanent injunction) and July 18, 1913 (the date of the decree on mandate dismissing the bill) were not recoverable on the injunction bond. *Houghton* v. *Meyer*, 208 U. S. 149. If the remedy of shippers and carrier were limited to proceedings on the bond they would be denied all recovery for overcharges after May 11, 1911. Furthermore the decree of May 11, 1911, expressly released the Railway Company and sureties from further liability on the bonds. In so far as the order referred to the master "under Rule 15" the determination also of damages "alleged to have been sustained by reason of the granting" of the permanent injunction, it was clearly erroneous and affords no justification for enjoining suit in a state court to recover for overcharges made after the final decree. It is, indeed, contended by the Railway Company, that the effect of the decree entered by the District Court is to deprive shippers and travellers of all remedy under the bond.[1] But Gallup makes no claim

and judgment entered in the same action against the sureties on the bond; provided, however, that unless the damages are thus assessed in the cause, or a judgment entered that the party enjoined is entitled to no damages by reason of the improper granting of the injunction, he may proceed on the bond in an action at law without any further order or leave of the court."

[1] The allegations of the supplemental bill are: "Complainant alleges that [by?] the final decree entered in the aforesaid cause on the 11th day of May, 1911, hereinbefore referred to, it was ordered that the bond for injunction filed by the complainant be released and the sureties thereon discharged from further liability, and it is advised and avers that the effect of said order was to relieve complainant of all liability under said bond and preclude any recovery of damages on said bond or by reason of or growing out of the injunctions ordered in the aforesaid cause.

"Complainant avers that upon the rendition of the final decree in said cause perpetuating and making the temporary injunction theretofore granted permanent said bonds ceased, by operation of law, to

under the bond. He sues on causes of action to recover overcharges arising under the Arkansas statutes. His right to sue, suspended by the injunctions improvidently granted, revived as soon as the permanent injunction was dissolved by the decree dismissing the bill. Although the injunctions enjoined all shippers and travellers, and therefore him, from instituting suits on account of alleged overcharges, Gallup did not in fact become a party to the suit in the District Court; and he could not, after the mandate directed dismissal of the bill, be compelled to submit to that court the adjudication of his claim.

The contention of the Railway Company that the "supplemental bill" should be sustained to prevent multiplicity of suits is also unfounded. Unless it is maintainable as an ancillary bill, the federal court was without jurisdiction as there was no diversity of citizenship. But it was not ancillary to any relief properly within the scope of the decree dismissing the original bill. As an independent bill it is also without equity. The only common issue between the Railway Company and the several shippers and travellers, (namely, whether the rates promulgated by the Railroad Commission were confiscatory), had been settled by the decision of this court. In no other respect have shippers and travellers a common interest. The claims of each present a separate controversy unconnected with that of any of the others. This is obviously true as to all issues of fact which will arise in considering their several claims. And the bill contains no allegation or even suggestion that a controverted question of law, common to all the claims, is involved, which will determine their right to recover or even that there is involved a question of law not fundamental in which they have a

---

have any effect, and complainant is not liable for any damage that may have accrued to any passenger or shipper on its line of railroad after the rendition of the final decree perpetuating and making the temporary injunction permanent."

common interest: It might be a convenience to the Railway Company to have these numerous claims of shippers determined by the master in the District Court; but such a course would certainly involve great inconvenience to many of the shippers. The bill cannot be maintained as one to prevent multiplicity of suits.

*Affirmed.*