RECONSTRUCTION FINANCE CORPORA-
TION v. CENTRAL REPUBLIC
TRUST CO.

No. 14189.

District Court, N. D. Illinois, Eastern
Division.

Aug. 13, 1935.

978

John L. Hopkins, O. John Rogge, James A. Sprowl, Floyd M. Rett, and George E. McMurray, all of Chicago, Ill., and James B. Alley, Max O'Rell Truitt, Harold Rosenwald, and Edward S. White, all of Washington, D. C., for plaintiff.

Henry J. & Charles Aaron, Altheimer, Mayer, Woods & Smith, George S. Anderson, Ashcraft & Ashcraft, Norman Asher, Baldwin & Rugen, John Potts Barnes, Alfred Beck, Albert Belshe, Berger & Newmark, Russell T. Berry, E. A. Biggs, Bither & Bither, Guy M. Blake, Arthur E. Boroughf, George C. Both, L. M. Bowden, Boyle, Murphy & Nelson, Brewer, Smith & Farrell, Bryant, Roberts, Hwass & Lewe, Isidore Brown, George T. Buckingham, Bernard J. Brown, John C. Bulger, Burke, Jackson & Burke, D. F. Bustin, Butler, Pope, Ballard & Elting, Butz, Von Ammon & Marx, Carnahan, Slusser & Mitchell, August J. Calcagno, Cameron & Heath, Castle, Williams, Long & McCarthy, Chapman & Cutler, Joseph Chavkin, Ernest W. Clark, H. J. Clark, Cohen, Tomas & Cohen, Meyer Cohn, Concannon & Dillon, Alfred M. Cordell, Cutting, Moore & Sidley, Cummins, Hagenah & Flynn, Cummings & Wyman, Dankowski & Dankowski, Defrees, Buckingham, Jones & Hoffman, Donald B. Dodd, Homer A. Dodge, Eckert & Peterson, Ellis & Hackett, Samuel A. & Leonard B. Ettelson, Harold A. Fein, Fischel, Kahn, Heart & Epstein, Fisher, Boyden, Bell, Boyd & Marshall, A. L. Flynn, Harry Arthur, Lillian Rose Funk, Lee J. Frank, Frank E. Freund, Robert Friedlander, Herbert J. Friedman, Albert W. Froehde, A. S. & E. W. Froehlich, Gallagher, Rinaker, Wilkinson & Hall, Gann, Secord & Stead, Gardner, Carton & Douglas, Geroulis & Tatooles, John Thornton Gilbert, George Gillette, James R. Glass, Grossman & Edelstein, Harold M. Goldstein, George A. Gordon, Ivan Barton Goode, Charles F. Grimes, J. Milton Guy, Jr., Albert E. Hallett, Jr., Jacob G. Hamer, Walter Hamilton, and Oscar Wyclif Harman, all of Chicago, Ill., Healy & Beverly, of Elgin, Ill., Heile, Cavender, Milchrist & Kaiser, Ernest J. Hewitt, Heineman & Langsett, Samuel C. Horwitz, Arthur J. Hughes, Jacobson, Merrick, Nierman & Silbert, M. A. Jersild, Bernard F. Johnston, Johnson, Johnson & Johnson, Johnson, Swanstrom, Wiles & Clawson, Kamfner, Halligan & Marks, I. J. Karlin, Samuel Kassel, G. A. Kelly, Edward J. Kelly, Henry Eugene & Wm. M. Kelly, Knapp, Beye, Allen & Cushing, Morris Kompel, Edw. H. Kubitz, Urban A. Lavery, Samuel T. Lawton, Lederer, Livingston, Kahn & Adler, John M. Lee, Levinson, Becker, Gilbert, Peebles & Swiren, A. C. Lewis, I. P. Lewis, Isaac B. Lipson, Lord, Lloyd & Bissell, Harry J. Lurie, Luster & Luster, J. Warren McCaffrey, Joseph McCormack, Arthur F. McCormick, Walter E. McCornack, T. B. McGrath, F. H. McKeever, McNab, Holmes & Long, Wm. Mannhardt, John Mann, George S. Marks, Benj. S. Mesirow, F. E. Matthews, K. L. Karr, D. G. Michalopoulos, Creighton S. Miller,

Matthew Mills, Montgomery, Hart, Pritchard & Herriott, Meyer Morton, Moses, Kennedy, Stein & Bachrach, Edward Menkin, H. Leo Neiburger, Arthur Wm. Nelson, C. E. Newton, Newby, Rathbun & Burditt, Sidney C. Nierman, Sanford Olson, Pam & Hurd, Pines & Stein, Pomeroy & Martin, Poppenhusen, Johnston, Thompson & Cole, Millard R. Powers, Hyman Reeder, Rosenthal, Hamill & Wormser, Jos. Rolnick, Myer N. Rosengard, Ross, McConnell & Watts, Rubenstein & Becker, Sanders, Childs, Bobb & Westcott, Edgar J. Schoen, Scott, MacLeish & Falk, Schuyler, Weinfeld & Hennessy, Schwartz, Welfeld & Perlman, A. A. Schwarzbach, Seago, Bradley & McRoy, Seyfarth & Leonard, Lester B. Shafton, Shulman, Shulman & Abrams, Sims & Stransky, Joseph G. Slottow, Ben M. Smith, Blake C. Smith, Sonnenschein, Berkson, Lautmann, Levinson & Morse, Spencer & Bryan, Lewis A. Stebbins, S. Sidney Stein, Stebbins, McKinley & Price, Oscar D. Stern, Felix J. Streyckmans, Swanson, Dodge & Bremner, Taylor, Miller, Busch & Boyden, Morris Leibman, Preston Boyden, Tenney, Harding, Sherman & Rogers, C. M. Thomson, Townley, Wild, Campbell & Clark, C. E. Tripp, Frank L. Tuttle, Ungaro & Sherwood, Albert H. & Henry Veeder, Herman Waldman, Wadsworth Watts, Leonard A. Weinberg, White & Hawxhurst, Walter E. Wiles, Wilhartz, Hirsch & Schanfarber, Wilson & McIlvaine, William H. Winslow, Jr., Winston, Strawn & Shaw, C. V. Wisner, Jr., S. R. Wittelle, F. Philip Young, and Zane, Morse, Zimmerman & Norman, all of Chicago, Ill., Perkins & Battle, of Charlottesville, Va., and Alphonse G. Riesenberg, of Cincinnati, Ohio, for defendants.

Herman Fabry, pro se.

WILKERSON, District Judge.

This bill is brought by plaintiff on behalf of itself and all other creditors of the defendant bank to enforce the liability of stockholders under section 6 of article 11 of the Illinois Constitution. That section is as follows: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder."

The bill alleges that the defendant bank is indebted to plaintiff for more than $50,000,000 which is past due; that said defendant bank has other unpaid liabilities to other creditors; that the par value of its capital stock is $14,000,000; that it is unable to pay its debts as they mature; that other creditors have threatened to commence separate suits to recover from stockholders the amounts of their claims; that if judgments and decrees are obtained in such suits they may be for large portions of the amounts of the liabilities of such stockholders to creditors of defendant bank; that by means of such suits such creditors may appropriate to themselves an unjust and inequitable advantage over plaintiff; and that the amounts to be collected from stockholders should be applied to the common benefit of all creditors to whom each stockholder is liable under the Illinois Constitution, in accordance with the equitable rights of each of the creditors.

The bill prays that the court may determine who are the creditors of defendant and who are the stockholders liable to each creditor; that the stockholders who are defendants may be required to pay into court the amounts of their respective liabilities; that equitable distribution thereof may be made among the creditors of defendant bank; and that all other creditors may enjoin them from prosecuting suits against the stockholders.

Many motions to dismiss have been filed. In support of those motions briefs and arguments touching many questions have been submitted. Some of the questions raised cannot be disposed of upon a motion to dismiss. It is the rule in the federal courts that a case in equity involving important matters should go to issue and proof where a doubtful question is raised by the pleadings. It is the practice to overrule a demurrer or motion to dismiss unless it is founded upon an absolutely clear proposition that, taking the allegations to be true, the bill must be dismissed at the hearing. The motion to dismiss must be decided on the allegations of the bill alone. If a bill states a prima facie case it cannot be dismissed because the chancellor judicially knows of facts that would support an answer, unless his judicial knowledge is so broad that he can properly hold that there are no facts which would controvert the answer. Kansas v. Colorado, 185 U. S. 125, 144, 22 S. Ct. 552, 46 L. Ed. 838; White v. Federal Radio Commission (D. C.) 29 F.(2d) 113;

Krouse v. Brevard Tannin Co. (C. C. A.) 249 F. 538; Ansehl v. Puritan Pharmaceutical Co. (C. C. A.) 61 F.(2d) 131; Bronk v. Charles H. Scott Co. (C. C. A.) 211 F. 338. The obvious application of the rules above stated to some of the points argued in support of the motions makes it unnecessary to refer to those points specifically.

■ It is argued by defendants that the act of Congress creating the Reconstruction Finance Corporation (15 USCA §§ 601–617) does not confer power upon the corporation to enforce the double liability provision of the Illinois Constitution. It is pointed out that there are states which do not impose a double liability upon the stockholders of state banks, and that Congress must be presumed to have intended that a uniform rule should apply to all state banks. Section 5 of the Reconstruction Finance Corporation Act as amended (15 USCA § 605) provides:

"To aid in financing agriculture, commerce, and industry, including facilitating the exportation of agricultural and other products, the Corporation is authorized and empowered to make loans, upon such terms and conditions not inconsistent with this chapter as it may determine, to any bank, savings bank, trust company, building and loan association, insurance company, mortgage-loan company, credit union, Federal land bank, joint-stock land bank, Federal intermediate credit bank, agricultural credit corporation, livestock credit corporation, organized under the laws of any State or of the United States, including loans secured by the assets of any bank, savings bank, or building and loan association that is closed, or in process of liquidation to aid in the reorganization or liquidation of such banks or building and loan associations, upon application of the receiver or liquidating agent of such bank or building and loan association, and any receiver of any national bank is hereby authorized to contract for such loans and to pledge any assets of the bank for securing the same.

"All loans made under the foregoing provisions shall be fully and adequately secured. The corporation, under such conditions as it shall prescribe, may take over or provide for the administration and liquidation of any collateral accepted by it as security for such loans. Such loans may be made directly upon promissory notes or by way of discount or rediscount of obligations tendered for the purpose, or otherwise in such form and in such amount and at such interest or discount rates as the corporation may approve. * * *" (47 Stat. 6; 47 Stat. 715.)

Defendants rely upon United States v. Stanford, 161 U. S. 412, 16 S. Ct. 576, 40 L. Ed. 751. They urge that under the reasoning in that case the court should hold that Congress did not intend to give to the Reconstruction Finance Corporation the power to hold subscribers of banks organized under the laws of states providing double liability for such double liability. That construction of the statute, in my opinion, is not to be adopted.

The Reconstruction Finance Corporation was created as a government agency "to provide emergency financing facilities for financial institutions, to aid in financing agriculture, commerce, and industry." 47 Stat. 5. Broad powers were conferred upon it "to make contracts; to lease such real estate as may be necessary for the transaction of its business; to sue and be sued, to complain and to defend." 47 Stat. 6, 15 USCA § 604. It is one of the incorporated agencies employed by the government so that commercial methods may be used and operations conducted free from the restrictions imposed upon treasury transactions. U. S. Shipping Board Merchant Fleet Corporation v. Harwood, 281 U. S. 519, 50 S. Ct. 372, 74 L. Ed. 1011; Skinner & Eddy Corporation v. McCarl, 275 U. S. 1, 48 S. Ct. 12, 72 L. Ed. 131. It is authorized in broad terms to make loans to any bank upon such terms and conditions not inconsistent with the act as it may determine, provided that the loan shall be fully and adequately secured. The loans may be made directly upon promissory notes or by way of discount or rediscount of obligations tendered for the purpose, or otherwise in such form and in such amount and at such interest or discount rates as the corporation may approve.

The meaning of the words employed is that the loan is to be made upon terms and conditions prescribed by the Reconstruction Finance Corporation and accepted by the borrower. The corporation, according to the language of the act, may make the loan upon the condition that it shall have all the rights of an ordinary creditor of the bank. It is within its power to make a loan and prescribe as one of the terms thereof that the stockholders of the bank shall not be held for their stock liability. The terms of the

contract present fact questions. Under the averments of the bill, upon which alone the motion to dismiss must be decided, the Reconstruction Finance Corporation is in the same position as that of any other creditor who has loaned money to the bank and taken its note secured by some collateral. It cannot be deduced from the averments of the bill that by taking the collateral, or in any other way, the Reconstruction Finance Corporation waived the contractual obligation of the stockholders of the bank.

■■■ The language of the act giving to the Reconstruction Finance Corporation power to prescribe the conditions upon which loans are made is so clear that it is not to be added to or subtracted from by considerations drawn from any extraneous source. In Caminetti v. United States, 242 U. S. 470, 490, 37 S. Ct. 192, 196, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168, the Supreme Court said: "Reports to Congress accompanying the introduction of proposed laws may aid the courts in reaching the true meaning of the legislature in cases of doubtful interpretation (Blake v. National Bank, 23 Wall. 307, 319, 23 L. Ed. 119, 120; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 42, 15 S. Ct. 508, 39 L. Ed. 601, 603; Chesapeake & Potomac Telephone Co. v. Manning, 186 U. S. 238, 246, 22 S. Ct. 881, 46 L. Ed. 1144, 1147; Binns v. United States, 194 U. S. 486, 495, 24 S. Ct. 816, 48 L. Ed. 1087, 1090). But, as we have already said, and it has been so often affirmed as to become a recognized rule, when words are free from doubt they must be taken as the final expression of the legislative intent, and are not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source. In other words, the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent. See Mackenzie v. Hare, 239 U. S. 299, 308, 36 S. Ct. 106, 60 L. Ed. 297, 300 [Ann. Cas. 1916E, 645]."

And in United States v. Missouri Pacific R. Co., 278 U. S. 269, 278, 49 S. Ct. 133, 136, 73 L. Ed. 322, the same rule of statutory construction is stated: "Appellants seek to support the view for which they contend by some of the legislative history of the enactment and especially by explanatory statements made by Senator Elkins in connection with the report of the majority of the Senate committee submitting the bill for the act in question. Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure, and other like extraneous matter, may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed. United States v. [Trans-Missouri] Freight Ass'n, 166 U. S. 290, 325, 17 S. Ct. 540, 41 L. Ed. 1007; Pennsylvania R. R. v. International Coal Co., 230 U. S. 184, 199, 33 S. Ct. 893, 57 L. Ed. 1446; Mackenzie v. Hare, 239 U. S. 299, 308, 36 S. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645; Caminetti v. United States, supra, 242 U. S. 470, 490, 37 S. Ct. 192 [61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168]."

■■■ The requirement that all loans shall be fully secured does not amount, in my opinion, to the expression of an intent on the part of Congress that the liability of stockholders of a bank is never to be enforced. A loan may be adequately secured when made, and the value of the security may be seriously impaired before the loan is due. The effect of a failure, if there was one, on the part of the officers and directors of the Reconstruction Finance Corporation to perform their statutory duty with respect to exacting security, is a matter, obviously, which cannot be presented on the motion to dismiss. It is a defense which must be made in the answer.

■■■ United States v. Stanford, supra, in my opinion, does not support the position taken by the defendants. The language of the court must be read with an appreciation of the peculiar facts of the case and of the atmosphere surrounding it. It was held that the liability of the stockholders depended upon the acts of Congress, and that the Central Pacific Railway Company, the California corporation, was given, by act of Congress, all the rights and privileges of, and was made subject to, the same terms and condi-

tions as the Union Pacific Railroad Company, organized under federal law, and that the only security stipulated for was a lien by way of mortgage on the property of the corporation, without imposing any liability upon the stockholders for any claim of the United States. Under the Reconstruction Finance Corporation Act the liability of the stockholders in states organized under laws providing for double liability is made dependent upon the terms of the loan. There is nothing in the act limiting the power of the corporation to contract. If the act is to be read in its relation to the laws of states which do not provide for double liability, it must be read also in its relation to federal law. The act authorizes loans to national banks. The statute (R. S. § 5151, 12 USCA § 63) provides that stockholders shall be "held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." There is nothing in the Reconstruction Finance Corporation Act, in my opinion, from which we can deduce the intention of Congress to abrogate this provision of federal law with respect to loans made to national banks. The intent of Congress as to both state and national banks, in my opinion, was to give to the Reconstruction Finance Corporation broad powers to prescribe the terms of contracts with borrowers, to put itself in the same position as that of other creditors if it sees fit to do so, or in its discretion to waive the stockholders' liability as a condition of the loan.

 Defendants urge that this suit is not one which may be maintained in equity in a federal court. In considering this objection we look, of course, not to local laws or rules of decision, but to the uniform principles, rules, and usages of equity as administered in the federal courts. Guffey v. James A. Smith, 237 U. S. 101, 114, 35 S. Ct. 526, 59 L. Ed. 856; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447.

No principle of equity jurisprudence is superior to that stated by Chief Justice Fuller in Union Pacific R. Co. v. Chicago, Rock Island & Pacific R. Co., 163 U. S. 564, 600, 601, 16 S. Ct. 1173, 1187, 41 L. Ed. 265: "It must not be forgotten that, in the increasing complexities of modern business relations, equitable remedies have necessarily and steadily been expanded, and no inflexible rule has been permitted to circumscribe them. As has been well said, equity has contrived its remedies 'so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated,' and 'has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed.' Pom. Eq. Jur. § 111."

Is the power of a federal court of equity broad enough to cover a suit of this kind? Or is the court obliged under the principles announced and the rules prescribed by the Supreme Court to follow the restricted view of equity jurisdiction advanced by the defendants? It is my opinion, after giving consideration to the decisions which are binding on this court, as well as those which are persuasive, that this suit may be maintained on the equity side of this court. Pollard v. Bailey, 20 Wall. (87 U. S.) 520, 22 L. Ed. 376; Terry v. Little, 101 U. S. 216, 25 L. Ed. 864; Illinois Surety Co. v. United States (C. C. A.) 226 F. 665; Alsop v. Conway (C. C. A.) 188 F. 568, certiorari denied 223 U. S. 720, 32 S. Ct. 523, 56 L. Ed. 629; Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273.

 Under the laws of Illinois both before and after the enactment of amended section 11 of the Banking Act (Smith-Hurd Ann. St. Ill. c. 16½, § 11), the suit of plaintiff was a proper proceeding in equity. In Golden v. Cervenka, 278 Ill. 409, 435, 116 N. E. 273, 284, decided before the enactment of amended section 11 of the Banking Act, the court said: "On behalf of some of the stockholders various questions of procedure are presented. It is argued that all the creditors cannot join in one suit; that all the stockholders cannot be joined in one suit; that the stockholders are entitled to trial by jury; that the receiver cannot enforce the stockholders' liability; and that the bill and cross-bill are multifarious. The objections that the creditors cannot join in one suit, that the stockholders cannot be joined in one

suit, and that they are entitled to trial by jury are answered by the cases of Eames v. Doris, 102 Ill. 350, Tunesma v. Schuttler, 114 Ill. 156, 28 N. E. 605; Queenan v. Palmer, 117 Ill. [62] 619, 7 N. E. 470, 613, and Palmer v. Woods, 149 Ill. 146, 35 N. E. 1122. These cases hold that a bill may be maintained by creditors of an insolvent banking corporation, in behalf of themselves and of other creditors, against all the stockholders to enforce the personal liability of the stockholders, to enjoin the prosecution of suits by individual creditors against individual stockholders, to have an account taken of all the liabilities of the bank, to establish the amount for which the various stockholders are liable, and to have the amount of debts proved apportioned among the stockholders."

■ The rule stated in Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380 (upon which the decision in Broderick v. American General Corporation (C. C. A.) 71 F.(2d) 864, 94 A. L. R. 1359 is based), in my opinion, may not be invoked to bar a suit in equity brought by a creditor of a bank against the stockholders on behalf of himself and other creditors. In suits brought by a receiver, a superintendent of insurance, or the Comptroller of the Currency for the full amount of the liability of each stockholder, the ground for appealing to equity is the avoidance of a multiplicity of suits. That, in itself, was held under the facts of those cases not to be a ground for equitable relief. Commenting upon Hale v. Allinson, the Circuit Court of Appeals for the Sixth Circuit, in Alsop v. Conway, supra, 188 F. 568, at page 575, said: "We have not overlooked the settled course of decisions that actions for the recovery of the full statutory liability under the national banking act must be had at law. Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; United States v. Knox, 102 U. S. 422, 26 L. Ed. 216. But suits for collection under the national banking act differ from the proceedings before us in two important respects: First, that under the national banking act the question whether the assessments shall be for 100 per cent. or less than the full statutory liability rests entirely in the discretion of the comptroller (Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, supra); and, second, the administration and distribution of the funds collected is not had in the suit instituted for their collection, but is carried on by the comptroller independently of judicial proceedings. But notwithstanding these distinctions, where a suit by a receiver under the national banking act is for less than the full liability, the proceeding is not necessarily at law. A suit in equity may, in proper cases, be maintained on the ground not only that a trust fund is sought to be recovered, and that there is a complication of interest in the questions and matters involved, but for the purpose of avoiding multiplicity of suits. Bailey v. Tillinghast, supra [(C. C. A.) 99 F. 801]. We find nothing in Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380, opposed to the views we have expressed, for there the suit was merely to recover, by suit in Pennsylvania, the liability of stockholders of a Minnesota corporation whose affairs were being administered in a suit instituted in that state. There was plainly no reason why separate suit should not have been brought against each stockholder, and at law. In our opinion, the suit before us was properly brought in equity, and against all the stockholders."

The avoidance of a multiplicity of suits as a ground of equity jurisdiction is discussed by Judge Severens in Bailey v. Tillinghast (C. C. A.) 99 F. 801, 806, 807. And in Hale v. Allinson, supra, 188 U. S. 56, pages 77, 78, 23 S. Ct. 244, 252, 47 L. Ed. 380, the Supreme Court said:

"Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not

in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.

"We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of rights or interest in the subject-matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy."

In St. Louis, Iron Mountain & Southern R. Co. v. McKnight et al., 244 U. S. 368, at page 375, 37 S. Ct. 611, 614, 61 L. Ed. 1200, speaking of a bill by a carrier to restrain shippers from instituting suits against the carrier on account of overcharges collected from them while injunctions, temporary and permanent, afterwards reversed by the Supreme Court, were in force, it is said: "As an independent bill it is also without equity. The only common issue between the railway company and the several shippers and travelers (namely, whether the rates promulgated by the Railroad Commission were confiscatory) had been settled by the decision of this court. In no other respect have shippers and travelers a common interest. The claims of each present a separate controversy unconnected with that of any of the others. This is obviously true as to all issues of fact which will arise in considering their several claims. And the bill contains no allegation or even suggestion that a controverted question of law, common to all the claims, is involved, which will determine their right to recover, or even that there is involved a question of law not fundamental, in which they have a common interest."

In this suit the defendants urge that the bill should be dismissed because the plaintiff is without power, under the act creating it, to enforce the double liability provision of the Illinois Constitution; and they then assert that the bill may not be maintained to avoid a multiplicity of suits for the reason that no controverted question of law, common to all stockholders, is involved which will determine the right to recover, and that there is not involved a question of law that is fundamental in which they have a common interest. Defendants when they challenge the right of the Reconstruction Finance Corporation to the benefit of the double liability provision of the Illinois Constitution, in my opinion, demonstrate the propriety of the suit under federal law as one to avoid a multiplicity of suits. Certainly plaintiff should not be required to litigate this question of its power in thousands of suits with separate stockholders in order to get an adjudication which is binding upon all stockholders.

■■■ The bill, however, in my opinion, is amply supported on other grounds of equity jurisdiction. Let us consider the complication of interest in the matters involved and then answer whether or not equity requires that the amounts for which the stockholders are separately liable should be brought together in one fund in order that the rights of the creditors therein may be equitably adjusted. The constitutional liability of a stockholder to the bank's creditors is for all its liabilities accruing while he was a stockholder to the extent of his stock, and for no other liability. If stock is transferred after a liability has accrued, the debts of the bank are no charge upon the shares of stock which are transferred. Stockholders at the time a liability was incurred are individually and personally liable to the creditors to an amount equal to their stock. If creditors were remitted to their remedy at law, the creditor who first sued and who was not guilty of laches in the prosecution of his suit would be entitled to priority over a creditor suing subsequently but who obtained judgment first. Take the case of a creditor whose claim is less than the liability of the stockholders whom he is suing so that other stockholders are entitled to share in the enforcement of that liability. What procedure at law is there for an adjudication among the creditors as to the correct amount of the claims of each one of them? As the liability of a stockholder is limited to liabilities accruing during his ownership of stock, it is obvious that each creditor may have a distinct group of stockholders answerable to him. As a result of this interweaving of liabilities each creditor may have many stockholders liable to him, and each stockholder may be liable to many creditors.

Each creditor is entitled to have the claims of other creditors apportioned in their relation to the stockholders in such a way that the equitable rule of allocating the claims so that the claim of each creditor will impinge the least upon the claims of other creditors will be observed. The complicated situation is one which calls for discovery, accounting and apportionment. To say that because the liability of each individual stockholder is direct and separate to each individual creditor the plaintiff has an adequate remedy at law, and to remit the creditors to a general scramble in a thousand law suits would be inconsistent with fundamental principles of equity and would be a strange commentary upon the adequacy of justice as administered in the federal courts.

■ If the foregoing ruling as to the grounds for equity jurisdiction is well founded, the jurisdictional objection of those stockholders whose stock is of the par value of $3,000 or less must fail. The amount in controversy is not measured by the claim against each particular stockholder. It is the amount to be collected and apportioned among the stockholders. Handley v. Stutz, 137 U. S. 366, 11 S. Ct. 117, 34 L. Ed. 706; Troy Bank v. G. A. Whitehead & Co., 222 U. S. 39, 32 S. Ct. 9, 56 L. Ed. 81; Alsop v. Conway, supra; Robertson v. Conway, 188 F. 579; Broderick v. American General Corporation, supra; White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67.

■ The plaintiff under both the general equity practice and Equity Rule 38 (28 USCA following section 723) is entitled to maintain this suit on its own behalf and on behalf of all other creditors of the bank. Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673; Luster v. Martin (C. C. A.) 58 F.(2d) 537. Nor does the suit violate Equity Rule 26 (28 USCA following section 723). There is one plaintiff of record. The fact that there are other creditors and that accounting and apportionment may be essential to complete relief does not make the creditors parties in the sense that the cause of action of plaintiff and the other creditors must be joint. The application of Rule 26 here attempted by defendants would destroy Equity Rule 38 (28 USCA following section 723) and the practice of courts of equity with respect to class suits. And Equity Rule 26 (28 USCA following section 723) permits uniting causes of action

"in order to promote the convenient administration of justice." While the other creditors on behalf of whom the suit is brought are not parties in the strict sense of that term, creditors who receive notice and are given an opportunity to present and prove their claims, and to be heard on the questions involved, will be bound by the adjudication. Leadville Coal Co. v. McCreery, 141 U. S. 475, 12 S. Ct. 28, 35 L. Ed. 824; Supreme Tribe of Ben-Hur v. Cauble, supra; Irwin v. Missouri Bridge & Iron Co. (C. C. A.) 19 F.(2d) 300, 303.

■ It is urged that the suit should be dismissed as to defendants holding stock on dates other than the dates of the accrual of the liabilities to plaintiff. It is alleged in the bill that there are creditors other than plaintiff. If the stockholders not liable to plaintiff are liable to other creditors, plaintiff has the right to have the claims of such creditors satisfied out of the liabilities of the stockholders not liable to plaintiff before they are permitted to share with plaintiff in that part of the fund realized from stockholders liable to it. If a stockholder is not liable to any creditor, the defense should be made in the answer and not by motion to dismiss.

■ The defense that this suit cannot be maintained until the collateral has been sold is one which cannot be urged on motion to dismiss. The facts relative to the sale of the collateral are not presented by the averments of the bill. Whether plaintiffs, having invoked the federal jurisdiction in equity and having made the bank a defendant should be required, as an equitable condition, to bring the entire fund into court to the end that the rights of stockholders and creditors may be completely and finally settled is a question which does not arise on the motion to dismiss.

■ It is urged that this court, in the exercise of its discretion, should relinquish its jurisdiction to the state court. This view cannot be accepted. The liability here is enforceable directly by creditors. The bill does not disclose any conflict with any state authority administering the assets of the bank pursuant to a state statute. No reasons of "convenience, efficiency or justice" are apparent. The suit brought in this court by a federal corporation on the ground that it arises under the laws of the United States is the same kind of a suit as it would have brought in the state court if it had elected to proceed in that forum. The plaintiff has the right to elect its

forum. The jurisdiction having been properly invoked, it is the duty of the district court to hear and determine the controversy unless relieved of that duty by established principles of federal law. Boynton v. Moffat Tunnel Imp. Dist. (C. C. A.) 57 F.(2d) 772; McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762; Chicot County v. Sherwood, 148 U. S. 529, 13 S. Ct. 695, 37 L. Ed. 546.

There is no conflict of jurisdiction here. The cases cited by defendants, in my opinion, are not applicable. Puerto Rico v. Russell & Co., 288 U. S. 476, 53 S. Ct. 447, 77 L. Ed. 903; Pennsylvania v. Williams, 294 U. S. 176, 55 S. Ct. 380, 79 L. Ed. 841, 96 A. L. R. 1166; Rogers v. Guaranty Trust Co., 288 U. S. 123, 53 S. Ct. 295, 77 L. Ed. 652, 89 A. L. R. 720; Canada Malting Co. v. Paterson Steamships, 285 U. S. 413, 52 S. Ct. 413, 76 L. Ed. 837; Massachusetts State Grange v. Benton, 272 U. S. 525, 47 S. Ct. 189, 71 L. Ed. 387; The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 29 L. Ed. 152; Charter Shipping Co. v. Bowring, Jones & Tidy, 281 U. S. 515, 50 S. Ct. 400, 74 L. Ed. 1008. Certainly they do not apply to anything presented by the averments of the bill. They do not warrant a dismissal of this suit in order that a similar suit may be commenced or prosecuted in the state court by plaintiff or some other creditor.

Other questions—alleged violation of Equity Rule 25 (28 USCA following section 723), multifariousness and kindred questions—have been argued. It is sufficient to say that there is not found in any of the objections a valid reason for a dismissal of this bill.

The motions to dismiss are overruled. The time for answer is extended to September 9, 1935.