## ARMOUR & CO. v. HAUGEN et al.
### No. 11034.

Circuit Court of Appeals, Eighth Circuit.
March 17, 1938.

Howard G. Fuller, of Fargo, N. D. (Fuller & Powers, of Fargo, N. D., and Walter C. Kirk, of Chicago, Ill., on the brief), for appellant.

E. T. Conmy and Goodwin T. Westlund, both of Fargo, N. D., for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is a suit in equity, the main purpose of which is to enjoin the appellees (defendants) from prosecuting fifteen separate actions at law for damages in a state court of North Dakota. The plaintiff (appellant) applied for a preliminary injunction, and the defendants made a motion to dismiss the complaint for want of equity. The defendants' motion was granted, a decree of dismissal was entered, and this appeal followed.

It would unduly extend this opinion to set out in full the allegations of the complaint. The essential facts well pleaded are in substance as follows:

The plaintiff, Armour & Co., owns land in West Fargo, N. D., upon the banks of the Sheyenne river, upon which land it has maintained and operated stockyards and a packing plant. It has run sewage and waste from the packing plant into the river and polluted it. There are some seventy farms bordering on the river, downstream from the plaintiff's plant, the occupants of which have been injuriously affected by the pollution of the river.

In July, 1934, thirty-two of these farm owners, not parties to this suit, brought separate actions in the district court of Cass county, N. D., against Armour & Co. for injunctions against the continued pollution of the stream and for damages for past pollution. Armour & Co. removed those actions to the federal court on the ground of diversity of citizenship. On or about February 6, 1935, Armour & Co. paid to the plaintiffs in those actions damages growing out of the pollution of the stream up to January 1, 1936; and thereupon all of the suits were dismissed, except one, known as the Storley suit, which was continued as a class suit subject to call for trial on or after November 1, 1935. As a part of this arrangement, Armour & Co. agreed to presently construct facilities for the primary treatment of its waste. These facilities were installed, but they did not avoid the pollution of the river.

On December 8, 1936, the Storley suit, in which a total of forty-four plaintiffs (including the thirty-two persons whose actions had been removed from the district court of Cass county and thereafter dismissed) had been impleaded, was tried. An interlocutory decree was entered denying a preliminary injunction, on condition that Armour & Co. should install by January, 1938, a plant for secondary treatment of its waste. The court retained jurisdiction to determine the entire controversy between all parties in equity, including the assessment of damages occasioned by the nuisance created by Armour & Co. through its pollution of the river. The court, however, refused to undertake an assessment of the damages sustained by sixteen of the plaintiffs in the Storley suit, who had commenced twelve actions at law for damages in the district court of Cass county, which were then pending and in which Armour & Co. had appeared. Armour & Co. then applied to this court for a writ of mandamus to compel the federal District Court in the Storley suit to retain jurisdiction of the claims of the sixteen plaintiffs whose actions were then pending in the state court. This court held that jurisdiction of those sixteen plaintiffs should be retained. Armour & Co. v. Miller, 8 Cir., 91 F.2d 521.

After the entry of the interlocutory decree in the Storley suit, the defendants in the suit at bar, none of whom had been a party to that suit, each commenced an action in the district court of Cass county, N. D., for $3,000 damages alleged to have been sustained by him on account of the pollution of the river by Armour & Co. The complaints in those actions "are identical or substantially similar except for names and descriptions of farms by said defendants severally occupied." The defendants are either owners or lessees in possession of farm land bordering on the river downstream from the plaintiff's plant. They are all represented by the same counsel, who are also counsel for the forty-four plaintiffs in the Storley suit and are employed under the same arrangement as to fees "to handle and deal with all of said cases as a group for all purposes but separate trials."

The plaintiff is about to apply systems for sewage disposal and treatment of waste, which will probably reduce the pollution of the river to such an extent that the water will no longer be unfit for consumption by livestock, although it will not be fit for human consumption. There is no known method of treating packing house waste which will eliminate all odor and impurity.

In its prayer for relief the plaintiff asks for an adjudication of the adverse claims of the parties to the use of the waters of the river, for a determination of the extent to which the plaintiff may rightfully render the river impure, for an injunction against the further prosecution by the defendants of their actions in the state court, and for an order requiring the defendants to intervene in the Storley suit or to present their claims in the suit at bar.

The question to be determined is whether, under the facts pleaded, the plaintiff is entitled to maintain this suit in order to prevent a multiplicity of actions, or for any other reason.

■ The plaintiff has by its own acts admittedly created the situation which has given rise to the actions in the state court which it seeks to have enjoined. It has polluted the Sheyenne river and will continue to pollute it in the future. No one has interfered with the use made by the plaintiff of the waters of the river, and no one challenges the plaintiff's right to make such use of the waters of the river as the law permits. The fact that those who are defendants in this suit have as-

serted in their actions in the state court that the plaintiff is making an unlawful use of the river does not in any proper sense make them adverse claimants to the use of the waters of the stream, or even cast a cloud upon the plaintiff's riparian rights. No defendant has wronged the plaintiff with respect to its use of the river or threatened to do so, and it may not resort to equity to resolve its own doubts as to its rights. Compare Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 289, 290, 48 S.Ct. 507, 509, 72 L.Ed. 880.

The defendants are admittedly persons occupying lands bordering on the river who have been adversely affected by the plaintiff's pollution of the stream. Each of them contends that the plaintiff is lawfully indebted to him for past damages which he has suffered because of unlawful pollution. Each of them has brought an action at law in his own right for his own damages, and, unless the plaintiff is entitled to an injunction, each defendant has a right to have the issues of fact in his case tried by a jury.

The actions brought by the defendants in the state court are not a combination of actions; they are an aggregation of actions. They have a common source, namely, the pollution of the river. They have little else in common. The extent of the pollution of the river at one point may vary from that at any other point. It is a fair assumption that the farms vary as to river frontage, as to shape and size, as to location of buildings, and as to the availability of water other than that of the river for farm use. The injury to the occupant of one farm may differ in kind and amount from that suffered by the occupant of any other farm. The damages which the owners or tenants have suffered cannot be determined from the same evidence nor necessarily measured by the same standards. It might be more convenient and less expensive for the plaintiff to have all of the defendants' actions transferred to the federal court and consolidated with the Storley suit to await the final result of the plaintiff's experimentation with its disposal system and the ultimate disposition of that suit. The suggestion that the trial of these actions should be enjoined and the defendants compelled to forego their rights to jury trials and submit themselves to the equity jurisdiction of the federal court, coming as it does from the party which alone is responsible for creating the conditions out of which the controversies arose, does not have a strong appeal.

■ It is impossible to state definitely under what specific circumstances equity will or will not intervene to prevent a multiplicity of suits. In Hale v. Allinson, 188 U.S. 56, 77, 23 S.Ct. 244, 252, 47 L.Ed. 380, the court said: "Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction."

It thus appears that the factors to be considered are these: (1) The real and substantial convenience of all parties; (2) the adequacy of the plaintiff's legal remedy; (3) the situations of the different parties; (4) the points to be contested; and (5) the result which will follow if jurisdiction is assumed or denied.

1. The real and substantial convenience of the plaintiff, as already pointed out,

might, to some extent, be served by having all of the litigation over its pollution of the river confined to the one suit in equity in the federal court, since the plaintiff would thereby save some expense and might gain other advantages. The real and substantial convenience of the defendants would obviously not be served by requiring them to try their actions in a single equity suit in the federal court.

2. The remedy at law which the plaintiff has by virtue of its right to defend the actions brought by the defendants is adequate unless the number of the actions makes it inadequate. If the actions all involved the same issues of law and fact so that they could be consolidated and tried together as one action, the right to defend each action separately would be an inadequate remedy. First State Bank v. Chicago, R. I. & P. R. Co., 8 Cir., 63 F.2d 585, 592, 90 A.L.R. 544. Since the issues are not identical and since the actions, therefore, could not properly be tried together, it seems to us that the right to defend each action separately must be regarded as an adequate legal remedy. There can be, of course, no assumption that the issues will not be correctly decided in the state court or that the plaintiff will be required to pay to any defendant more than it legally owes him.

3. The situations of the different parties have been already pointed out. Each of the defendants has a separate cause of action for damages based upon the pollution of the river as it has affected him.

4. The points to be contested in the state court actions are: (1) Whether each of the defendants in the suit at bar has been damaged by the plaintiff's pollution of the river; and (2) what is the amount of damages, if any, to which each defendant is lawfully entitled.

5. The result of enjoining the prosecution of the actions in the state court would be to delay the trial of those actions; to force the defendants herein to forego their rights of trial by jury; and to compel them to join with all others adversely affected by the pollution of the river, in a single equity suit in the federal court in which many of the issues presented would have to be separately tried in any event.

It seems to us that, as a practical matter, it cannot be said that the existence of these fifteen separate actions in the state court which have been brought by the individual defendants to recover past damages due to the unlawful pollution of the river, together with the threat of similar actions in the future if the plaintiff continues to pollute the stream, makes this a suit which "is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties and will not unreasonably overlook or obstruct the material interests of any."

Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447, involved a suit brought by some 300 taxpayers to enjoin the collection of a state tax on the ground of its unconstitutionality. It was contended that, since, if an injunction was denied, each one of the plaintiffs would be required to pay the tax and to sue to recover the amount which he paid, equity had jurisdiction to enjoin the enforcement of the tax in order that a multiplicity of suits might be avoided. The court said, 284 U.S. 521, at pages 529, 530, 52 S.Ct. 217, 221, 76 L.Ed. 447:

"In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or defendant, and the issues between them and the adverse party are not necessarily identical. St. Louis, Iron Mountain & Southern Ry. Co. v. McKnight, 244 U.S. 368, 375, 37 S.Ct. 611, 61 L.Ed. 1200; Kelley v. Gill, 245 U.S. 116, 120, 38 S.Ct. 38, 62 L.Ed. 185; Francis v. Flinn, 118 U.S. 385, 6 S.Ct. 1148, 30 L.Ed. 165; Scott v. Donald, 165 U.S. 107, 115, 17 S.Ct. 262, 41 L.Ed. 648; Hale v. Allinson, 188 U.S. 56, 77 et seq., 23 S.Ct. 244, 47 L.Ed. 380; and see Pomeroy, Equity Jurisprudence (4th Ed. 1918), §§ 251, 251½, 255, 259, 268.

"While the present bill sets up that the single issue of constitutionality of the taxing statute is involved, the alleged unconstitutionality depends upon the application of the statute to each of the appellees, and its effect upon his business, which is alleged to be interstate commerce. The bill thus tenders separate issues of law and fact as to each appellee, the nature of his business, and the manner and extent to which the tax imposes a burden on interstate commerce. The determination of

200

these issues as to any one taxpayer would not determine them as to any other. There was thus a failure of such identity of parties and issues as would support the jurisdiction in equity."

It is apparent that the claim of each of the parties plaintiff in that case to recover the tax, if paid, would depend upon whether the taxing statute was unconstitutional. That alone was not regarded as sufficient to support an injunction to avoid a multiplicity of suits. Since there was not a sufficient identity of parties and issues in that case to support the jurisdiction of a court of equity, it is clear that there is not a sufficient identity of parties and issues in the case at bar.

In New York Life Ins. Co. v. Stoner, 8 Cir., 92 F.2d 845, 848, this court said: "To entitle plaintiff to maintain its suit in the nature of a bill of peace, there must be involved an identity of issues. The actions, the multiplicity of which plaintiff seeks to enjoin, must all be based upon like facts and depend upon the same questions of law so that the decision of one will be practically determinative of all."

In Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 72, 56 S.Ct. 1, 5, 80 L.Ed. 47, it was held that "the grounds for relief to a single plaintiff which will deprive two or more defendants of their right to a jury trial must be real and substantial, and its necessity must affirmatively appear," and that a suit such as this cannot be used as a medium for transferring to a federal court, for any slight or insubstantial reason, actions at law pending in a state court which are not otherwise removable. See, also, New York Life Ins. Co. v. Stoner, supra, 8 Cir., 92 F.2d 845, at page 848.

While the plaintiff alleges that the defendants acted in concert in bringing their actions in the state court to recover their past damages, and are represented by the same counsel under the same arrangement as to fees, that allegation falls far short of an assertion that the claims of the defendants are without foundation and are being prosecuted pursuant to a conspiracy to ruin the plaintiff, as was the situation in Sovereign Camp, Woodmen of the World v. O'Neill, 266 U.S. 292, 297, 298, 45 S.Ct. 49, 50, 69 L.Ed. 293.

Our conclusion is that the ruling of the court below, that the complaint should be dismissed for want of equity, was correct.

The decree is affirmed.