### SPRAGUE v. ROSENBAUM et al.

(*Circuit Court, N. D. Illinois.* January 28, 1889.)

FACTORS AND BROKERS—LIABILITY.

    Cattle were consigned by C. to the defendants as stock-brokers at certain stock-yards. The plaintiff entered into negotiations with the agent of the defendants for the purchase of such cattle, informing him that he was acquainted with him and preferred to make the purchase from the defendants. The agent replied that it would make no difference whether the terms of sale were agreed upon with the defendants or with C., and referred him to the latter. The terms of sale were agreed upon with C. Weight tickets were given to the plaintiff in the firm name of the defendants, and also a bill of sale, though not signed at the bottom, reciting that the cattle had been sold to the plaintiff by the defendants for a named consideration. It appeared that C. was a stranger to the plaintiff, and that he had been informed that the defendants were in good credit. *Held,* that the defendants sold the cattle as their own, and were liable to plaintiff on an implied warranty of title.

At Law.

*Gov. Hamilton,* for plaintiff.
*Kraus, Mayer & Stein,* for defendants.

GRESHAM, J. The defendants are commission merchants or stockbrokers, doing business at the stock-yards at Chicago and Omaha. William J. Clark shipped from his home in Nebraska and consigned to the defendants at Omaha 172 steers for sale. The plaintiff, a stockfeeder and dealer in the same state, employed Savage & Green, who were also stock-brokers in the Omaha yards, to assist him in the selection and purchase of steers at that place. The plaintiff was informed on the morning of October 8, 1886, by an agent or employé of the defendants, that they held this lot of steers for sale, and upon going to the pens to examine them the plaintiff for the first time met Clark, who was anxious to sell the steers, but he and the plaintiff were unable to agree upon a price. . In the afternoon of the same day the plaintiff met W. A. Sharp, the agent and general superintendent of the defendants, who was about to leave the firm's office and' go home, not to return until the next day, and the plaintiff testified that he then told Sharp he would like to buy the steers, but desired to get home before Sunday, and that Sharp directed him to return to the pens, where he would find a man who could sell the steers; that he told Sharp he was acquainted with him, and preferred making the purchase from the firm; that Sharp replied it would make no difference whether plaintiff agreed upon the terms of sale with the defendant, or the person to whom he was referred. The evidence clearly shows that this person was Clark, and that the plaintiff then knew Clark was the consignor. Sharp testified that before leaving for his home, as already stated, the plaintiff expressed a desire to buy the steers, and said he should endeavor to do so before Sharp returned the next morning A short time after this conversation, the plaintiff and Clark agreed upon a price, went to the office of the defendants, and informed their general agent, in the absence of Sharp, of that fact. The agent caused the steers to be weighed, and gave the plaintiff weight tickets in the firm name of the defendants, also a brief instrument in the form of a bill of sale, but not signed at the bottom, stating that the defendants, had sold to the plaintiff 172 steers, weighing 138,790 lbs., at $2.70 per hundred, amounting to $3,747.33. The plaintiff, through Savage & Green, paid for the steers, they were delivered to him the next morning, he shipped them to his farm, and the defendants promptly paid Clark the purchase money, less their charges and commissions for making the sale. In reply to inquiries by the plaintiff, Savage & Green informed him that the defendants were in good standing and reliable. About a week after the sale, Harrington Emerson sued the plaintiff in replevin for possession of the steers, claiming them under a chattel mortgage which Clark had executed before the consignment to the defendants. The plaintiff promptly notified the defendants of the commencement of this suit, and requested them to defend it, which they did not do, and after the plaintiff was defeated, and had lost the steers, he brought this action to recover the amount he had paid for them.'

The general rule is that an agent who sells property as such for his known principal is not personally liable on the contract, the presumption being that the purchaser gives credit to the principal, and not to the

agent. This rule is reasonable, but it has no application when, from the contract, the usages or character of the business in which the agent is engaged, or in any other way, it appears that the purchaser intended to give credit to the agent. It is doing no injustice to the agent to hold him personally liable on his contract when it is shown that the purchaser dealt with the agent on the faith of his personal credit and solvency. Clark was a stranger to the plaintiff, and, after being informed that the defendants were responsible and in good credit, the plaintiff told their superintendent he was acquainted with him, and preferred making the purchase from the defendants. This is what a prudent man would be expected to do under the circumstances, and the plaintiff's intention to make the purchase from the defendants on their personal responsibility is thus clearly shown. The instrument which the defendants gave the plaintiff, although not subscribed by them, was the written contract of sale, not subject to change or modification by parol testimony. Their firm name appeared in it, not as agents of Clark, but as owners and sellers of the steers, and when they received the purchase money from the plaintiff and delivered the steers to him, the written contract became an executed one. If the sale had been on time, instead of for cash, and the purchase money had not been paid when it became due, the defendants could have maintained an action in their own names against the plaintiff; and, the plaintiff having lost the steers, it follows that the defendants are personally liable to him on their implied warranty of the title. Cattle are consigned to brokers at stock-yards from different states and territories, with full authority to sell them as their own, and that was the character of the consignment from Clark to the defendants. The testimony shows that the defendants did sell the steers to the plaintiff as their own. If the contention of the counsel for the defendants is correct, purchasers of cattle who happen to know the name of the consignor have no remedy against the brokers for their violated agreements.

Judgment for the plaintiff for the amount he paid for the steers, with interest from the day of sale.