## U. S. SHIPPING BOARD MERCHANT FLEET CORPORATION *v.* HARWOOD, TRUSTEE IN BANKRUPTCY, ET AL.

No. 345.   Argued April 16, 1930.—Decided May 19, 1930.

*Mr. Claude R. Branch,* Special Assistant to the Attorney General, with whom *Attorney General Mitchell* and *Messrs. J. Frank Staley, Erwin N. Griswold, Chauncey G. Parker,* General Counsel, Fleet Corporation, and *O. P. M. Brown,* Special Counsel, Fleet Corporation, were on the brief, for petitioner.

*Mr. Frederick H. Wood,* with whom *Messrs. Herbert B. Lee, Richard S. Holmes, W. H. L. Edwards,* and *William W. Robison* were on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

In this case certiorari was granted, 280 U. S. 544, to review a ruling of the Court of Appeals for the Second Circuit that the Fleet Corporation is subject to suit upon a contract which it entered into, acting as an agency of the United States under the Urgent Deficiencies Act of June 15, 1917, (40 Stat. 182) as amended.

On June 15, 1917, the Fleet Corporation contracted with Groton Iron Works for the construction of twelve wooden ships, reduced to eight by contract of September 30, 1918. On August 11, 1917, and April 20, 1918, contracts were executed, each for the construction of six steel ships. After the armistice the Fleet Corporation gave directions to suspend work on a part of the steel ships. The Iron Works became financially involved and, the Fleet Corporation having advanced large sums to it, negotiation for a settlement of various differences between the two corporations resulted in the contract between it and the Fleet Corporation of March 26, 1920. This

described the Fleet Corporation as " representing and acting . . . for and in behalf of the United States of America (hereinafter referred to as the owner)." It cancelled the earlier contracts, with some exceptions relating to the completion of the steel ships, and settled and released numerous other claims not now important, saving certain claims growing out of a reconciliation of accounts, then in progress, to determine the amount due for certain work on the wooden ships.

The Iron Works, before its bankruptcy, brought the present suit in the Superior Court of Connecticut, which was removed to the District Court for Connecticut, where, respondent, the trustee in bankruptcy, having intervened, the complaint was reframed so as to pray the cancellation of the contract of March 26, 1920, as procured by duress and fraud, an accounting and judgment for such amounts as should be found to be due for breach of the earlier contracts. A fourth separate defense, which alone is presently involved, set up that with respect to all the transactions alleged in the bill of complaint, petitioner acted solely as an agency of the United States, under powers delegated to it by the President under the Urgent Deficiencies Act, and that with respect to those transactions it was under no personal liability and respondent's only remedy was against the United States.

The District Court confirmed findings of a special master, in favor of petitioner, on the issues of fraud and duress and his conclusion that the rights of the parties were fixed by the contract of March 26, 1920, but gave judgment, sustaining the fourth defense and dismissing the complaint. 26 F. (2d) 116. The Court of Appeals reversed the judgment, holding that the suit might be maintained against the petitioner, but limited the relief to an accounting under the contract of March 26, 1920. 32 F. (2d) 680.

Concededly, as both courts below and the special master agree, in entering into the several contracts referred to, the Fleet Corporation was acting as an agency of the United States as alleged. · But all of the contracts were signed and sealed by the Fleet Corporation, which was referred to as a corporation organized under the laws of the District of Columbia and which promised to pay the stipulated price for the ships and to perform the other obligations of the contracts, in terms imposed on it. They contained no words purporting to bind the United States or in terms restricting the liability of the petitioner.

One acting as a private agent may be bound, notwithstanding his known agency, upon contracts which he executes in his own name. *Sprague* v. *Rosenbaum,* 38 Fed. 386; *Guernsey* v. *Cook,* 117 Mass. 548; *Brown* v. *Bradlee,* 156 Mass. 28; *Sadler* v. *Young,* 78 N. J. L. 594; *McCauley* v. *Ridgewood Trust Co.,* 81 N. J. L. 86; *Jones* v. *Gould,* 200 N. Y. 18. See *Worthington* v. *Cowles,* 112 Mass. 30; *Kean* v. *Davis,* 20 N. J. L. 425; *Cream City Glass Co.* v. *Friedlander,* 84 Wis. 53. Compare *Whitney* v. *Wyman,* 101 U. S. 392; *Post* v. *Pearson,* 108 U. S. 418. The only question now presented is whether the quasi-public character of the Fleet Corporation and the duties imposed upon it as an agency of the United States by Acts of Congress and Executive Orders, described and considered in earlier opinions of this Court, require a different conclusion with respect to its contracts. Shipping Act of September 7, 1916, c. 431, 39 Stat. 728, 730–732; Urgent Deficiency Act of 1917, *supra*; Merchant Marine Act of June 5, 1920, c. 250, 41 Stat. 988; Executive Orders No. 2664, July 11, 1917, No. 2888, January 18, 1918, No. 3018, December 3, 1918, No. 3145, August 11, 1919, and see *The Lake Monroe,* 250 U. S. 246; *United States* v. *Strang,* 254 U. S. 491; *Sloan Shipyards* v. *Fleet Corporation,* 258 U. S. 549; *Skinner & Eddy Corporation* v. *McCarl,* 275 U. S. 1; *Emergency Fleet Corporation* v. *Western Union,* 275 U. S. 415, 421.

The petitioner contends that there is a strong presumption, which is here controlling, that a public officer or agent is not to be deemed bound as an individual upon his contracts made in behalf of the government in the performance of a public duty, since no one participating in such a contract would be justified in assuming, in the absence of a clearly expressed intention otherwise, that the officer intends to bind himself to defray public expense from his private purse. *Parks* v. *Ross,* 11 How. 361; *Hodgson* v. *Dexter Company,* 1 Cranch 345; *Sheets* v. *Selden's Lessee,* 2 Wall. 177; see *District of Columbia* v. *Camden Iron Works,* 181 U. S. 453, 459.

But we need not decide the point or attempt to draw the line where that presumption may be overcome by language of the written contract which falls short of an explicit limitation of the personal liability of the agent. See *Hodgson* v. *Dexter, supra,* 364. For in the present case the agent is not an individual and its liability does not involve any expenditure of private funds for the satisfaction of public obligations. Its entire capital stock is government owned. Its funds and property were furnished to it by the government. They and government indemnity are alone the sources from which its obligations will be defrayed.

It was created as a government agency to construct a fleet of vessels to meet a wartime emergency. It was in order better to fulfill that purpose that Congress chose an instrument having the power to contract, as well as all the other powers of a private corporation, but with its every action government-controlled and all its assets supplied from government sources. The advantages of resorting to such powers in meeting the national emergency were urged as grounds for the choice of this particular form of agency, when the Urgent Deficiency bill was pending in Congress. See remarks of Senator Underwood, reporting the bill for the Senate Conferees, 55

Cong. Rec. 65th Cong., p. 3549; see *The Lake Monroe,*
*supra,* p. 254, *Skinner & Eddy Corporation* v. *McCarl,*
*supra,* p. 8. There is thus no basis for presuming that
the Fleet Corporation is not to be deemed bound by the
contracts into which it enters merely because it is acting
as such an agency, and its liability as measured by their
terms is not to be curtailed by the presumption which, it
is urged, may be indulged in favor of an individual acting
for the government.

That is the effect of the decision in *Astoria Marine
Works* v. *United States Shipping Board Emergency Fleet
Corporation,* 258 U. S. 549, 569. It was there held that
suit might be maintained against the Fleet Corporation
in a district court upon a contract in form and in manner
of execution like those presently involved and where, as
here the Fleet Corporation was described in the contract
as " representing the United States of America." It is
true, as the petitioner argues, that the precise question
at issue was one of jurisdiction of the district court to
entertain the suit rather than the Court of Claims, as one
against the Government. But the jurisdiction was sus-
tained on the ground that the Fleet Corporation was
bound by its contract, even though it acted as an agency
of the United States and so was subject to the suit upon
it in the District Court. The court said (p. 569): " The
whole frame of the instrument [the contract] seems to
us plainly to recognize the corporation as the immediate
party to the contracts. . . . If we are right in this, further
reasoning seems to us unnecessary to show that there
was jurisdiction of the suit. The fact that the corporation
was formed under the general laws of the District of
Columbia is persuasive, even standing alone, that it was
expected to contract and to stand suit in its own person,
whatever indemnities might be furnished by the United
States." See *United States* v. *Wood,* 290 Fed. 115, 263
U. S. 680.

Petitioner also insists that even though the Fleet Corporation is bound by its contracts, the liability has been undertaken by the United States by §§ 2(b) (1), 2(b) (2) and 2(c) of the Merchant Marine Act of June 5, 1920, 41 Stat. 988, which now affords the exclusive remedy for the enforcement of the liability. This legislation repealed, with certain specified exceptions, the Emergency Shipping Fund provisions of the Urgent Deficiencies Act of June, 1917, as amended. Section 2(b) (1) directed that "all contracts or agreements" previously made under the Emergency Shipping Fund legislation "be assumed and carried out by the United States Shipping Board." But § 2(b) (2) saved all rights or remedies accruing as a result of such contracts and provided that they "may be exercised in like manner, subject to the provisions of subdivision (c)" of § 2. Subdivision (c) directed the Board to settle "all matters arising out of or incident to the exercise by or through the President of any of the powers or duties imposed upon the President" by the earlier legislation "and for this purpose the Board, instead of the President, shall have and exercise any of such powers and duties relating to the determination and payment of just compensation." It further provided that "Any person dissatisfied with any decision of the Board shall have the same right to sue the United States as he would have had if the decision had been made by the President of the United States under the acts" repealed.

Petitioner points to no provisions of earlier acts giving to the President power to determine the amount due a contractor under a contract made by the Fleet Corporation, and respondent asserts that the powers of the President referred to in (c) are limited to the award of just compensation. But even if we assume that his powers were not so limited, we think subsection (c) at most, gave an additional remedy against the United States and not a substitute for existing remedies upon

contract liabilities expressly preserved by subdivision (b) (2). The words of subdivision (b) (2), saving all existing remedies which "may be exercised and enforced in like manner, subject to the provisions of subdivision (c)," must be taken to preserve the old remedies and to give the new one if the matter is one which the Board is authorized to settle by (c). Any other· construction would nullify the saving clause of (b) (2), for if the "decision of the Board" as used in the proviso of (c) embraces settlements of all matters arising out of contracts which, by paragraph (b) (1), it was directed to carry out and in the event that its decision is not accepted, the exclusive remedy is by suit against the United States, then none of the remedies accruing under such contracts and in terms saved by paragraph 2, were preserved.

*Affirmed.*