UNITED STATES SHIPPING BOARD
MERCHANT FLEET CORPORATION
v. FIRST NATIONAL S. S. CO. et al.

No. 7661.

United States Court of Appeals for the
District of Columbia.

Argued Dec. 2, 1940.

Decided Feb. 17, 1941.

Edward M. Curran, U. S. Atty., William S. Tarver, Asst. U. S. Atty., Francis M. Shea, Asst. Atty. Gen., and F. R. Conway, all of Washington, D. C., Sidney J. Kaplan, Sp.Asst. to the Atty. Gen., and William S. Ward and Enoch E. Ellison, Attys., Department of Justice, both of Washington, D. C., for appellant.

Stanley Suydam and Prew Savoy, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and VINSON and RUTLEDGE, Associate Justices.

GRONER, C. J.

Suit was begun in the court below by First National Steamship Company and others against United States Shipping Board, United States Shipping Board Merchant Fleet Corporation (formerly Emergency Fleet Corporation), Daniel C. Rop-er, as Secretary of Commerce, and United States Maritime Commission, for damages in excess of $300,000 and interest, representing the balance of deposits made in 1920 by the plaintiffs under a contract between them and "the United States Shipping Board and the Fleet Corporation", providing for repayment under conditions which had subsequently occurred. All defendants moved to dismiss, on the ground the court lacked jurisdiction of the defendants and of the subject matter. Thereafter the court granted the motion as to the United States Shipping Board, Secretary Roper, and the United States Maritime Commission, but denied it as to the Fleet Corporation. Subsequently Fleet Corporation filed a motion to dismiss and to strike and for a bill of particulars, which was overruled, and we allowed a special appeal.[1]

The single question for our decision is this—whether Sec. 203 of the Merchant Marine Act of June 29, 1936,[2] had the effect of completely dissolving Fleet Corporation so that after the effective date thereof the corporation had no capacity to be sued. The section is as follows: "The United States Shipping Board Merchant Fleet Corporation *shall cease to exist and shall stand dissolved.* All the records, books, papers, and corporate property of said dissolved corporation shall be taken over by the Commission. All existing contractual obligations of the dissolved corporation shall be assumed by the United States. Any suit against the dissolved corporation pending in any court of the United States shall be defended by the Commission upon behalf of the United States, under the supervision of the Attorney General, and any judgment obtained against the dissolved corporation in any such pending suit shall be reported to Congress in the manner provided in section 226, title 33, United States Code, for reporting judgments against the United States in the Court of Claims." (Italics supplied.)

Section 907, 46 U.S.C.A. § 1246, made the act effective thirty days after a majority of the Maritime Commissioners had taken office.

This proceeding was begun some two years after the passage of the act. Plaintiffs contend that Fleet Corporation has never been dissolved and that the purpose

---

[1] D.C.Code, Tit. 18, § 26.

[2] 49 Stat. 1985, 1987, 46 U.S.C.A. § 1113.

and effect of the quoted section was to require the Shipping Board or the Maritime Commission as its successor to proceed to dissolve it in accordance with the code of laws of the District of Columbia under which it had been created.[3] Plaintiffs also contend that, if Section 203 of the Merchant Marine Act be construed as abolishing the Fleet Corporation, it would, as to plaintiffs' claims, violate the terms of the Fifth Amendment of the Constitution.

The history and status of the Shipping Board and Fleet Corporation have been described again and again over the last quarter of a century in such a variety of cases that no more than a brief outline is necessary here. By the Shipping Act of 1916,[4] Congress established the Shipping Board and gave it power to create corporations under the District of Columbia laws for the purpose of purchasing, constructing, and operating merchant vessels in the commerce of the United States. The act provided that at the expiration of five years from the conclusion of the war, any such corporation should stand dissolved and all its property should revert to the Board, and that the Board should liquidate the property, pay its obligations, and deposit the residue in the Treasury of the United States. The Board created Fleet Corporation, and the United States subscribed to all of its capital stock and was at all times its sole stockholder. In its activities it acted as an agency of the United States. Notwithstanding this, it was held to have the attributes of an ordinary corporation. It had the right to sue and to be sued in state or federal courts.[5] Its employees were not agents of the United States subject to the provisions of Section 41 of the Criminal Code, 18 U.S.C.A. § 93.[6] It was suable for its torts,[7] and was liable for breach of contract.[8] That it was formed under the laws of the District of Columbia is persuasive that it was expected to contract and stand suit in its own person.[9] In 1917 Congress appropriated large sums to the President for the acquisition of merchant vessels and authorized him to exercise the powers granted him through agencies of his own choice.[10] In 1920 Congress authorized the Board to take over in its own name the property held by the corporation.[11] This was done by deed of April 16, 1923. After that time the corporation was utilized by the Shipping Board as an operating agent to complete projects begun by the Board and to liquidate certain other phases of the Board's activities.[12] In 1927 Congress changed the name of the corporation to United States Shipping Board Merchant Fleet Corporation, but made no changes in its status.[13]

Here the complaint shows that at some time in 1920 it was agreed between the Board and the Fleet Corporation that plaintiffs would operate, as manager-agents, three vessels owned by the United States; that the vessels were delivered and operated and an accounting duly made of earnings and expenses; and as a part of the contract that plaintiffs deposited sums in excess of $500,000 in money, which under the agreement was to be applied to the purchase price of the vessels if they should be sold and bought by plaintiffs and, if not, should be returned to plaintiffs; that the Board or the corporation subsequently insisted upon a written contract, which plaintiffs were unwilling to sign, and the Board thereupon withdrew the vessels and refused either to return the deposit or to pay certain additional sums due to plaintiffs as managing agents. To recover these sums, suit was brought against the corporation. Assuming the verity of the statements of the complaint, enough appears perhaps to make a case if the corporation is now suable. United States Shipping Board Merchant Fleet Corporation v. Harwood, 281 U.S. 519, 50 S.Ct. 372, 74 L.Ed. 1011, and cases cited there.

---

[3] D.C.Code, Tit. 5, Ch. 13, §§ 391–408.

[4] 39 Stat. 728, 46 U.S.C.A. § 801 et seq.

[5] Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corporation, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762; Skinner & Eddy Corp. v. McCarl, 275 U.S. 1, 6, 48 S.Ct. 12, 72 L.Ed. 131.

[6] United States v. Strang, 254 U.S. 491, 41 S.Ct. 165, 65 L.Ed. 368.

[7] Panama Railroad Co. v. Curran, 5 Cir., 256 F. 768.

[8] Skinner & Eddy Corp. v. McCarl, supra.

[9] Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corporation, supra.

[10] Urgent Deficiencies Act, June 15, 1917, 40 Stat. at 183.

[11] Merchant Marine Act, 1920, 41 Stat. 988, 46 U.S.C.A. § 861 et seq.

[12] Ibid., 46 U.S.C.A. § 871.

[13] 44 Stat. 1083, 46 U.S.C.A. § 810a.

And this brings us back to the original question—has Congress abolished the Fleet Corporation and revoked its charter? For if it has, obviously the suit against it cannot be maintained. The dissolution of the corporation would put an end to its existence and, as the Supreme Court said in a recent case, it would be in all respects likened to a dead person. "There must be some statutory authority for the prolongation of its life, even for litigation purposes." [14]

It is not contended or argued that Congress is lacking in the power to abolish the corporation, notwithstanding it used the statutes of the District of Columbia in its creation. The case in this respect is much like that of the Regional Agricultural Credit Corporation of Sioux City, Iowa, in Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784. The question there was whether Congress had endowed that corporation with the government's immunity. It was conceded Congress had the right to do so, and the only question was—had it done so? The sudden dissolution of the corporation is similar to giving it such immunity. The same question in the present case need not, we think, be traced to a general policy, for the conditions under which the Fleet Corporation was created arose out of an emergency, and the congressional intention is apparent that its life should not be prolonged beyond the probable continuation of the emergency. It was, therefore, declared in the beginning that its functions should cease five years after the termination of the war. In line with this purpose, Congress in 1920 authorized the Board to take over all of its property and left the corporation as a shell for convenience as an agency of the Board in winding up its war projects and activities. The Board thereafter was required to assume and carry out all contracts or agreements previously made, and the statute permitted dissatisfied persons to sue the United States.[15] In United States Shipping Board Merchant Fleet Corporation v. Harwood, supra, it was held that these provisions were cumulative and not a substitute for pre-existing remedies against the Fleet Corporation. But in 1936 Congress in the passage of the Merchant Marine Act of June 29, evinced a purpose to adopt a new policy and a new method in relation to the American merchant marine. It created a Maritime Commission and transferred to it all the functions, powers, and duties of the Shipping Board under all the previous legislation,[16] and it declared:[17] "The United States Shipping Board Merchant Fleet Corporation shall cease to exist and shall stand dissolved."

It is hard to think of language more definite in meaning. The provisions of the whole act show an unmistakable intent to adopt a new instrumentality to accomplish the new purposes, and in our opinion it is impossible to construe the words in any other manner than as revoking and annulling the charter of Fleet Corporation and ending its existence without regard to the ordinary machinery for dissolution under the District of Columbia laws. In fact, the original Merchant Marine Act of 1916 indicates that its dissolution was to be independent of these laws. The D.C.Code of 1901, then and now in effect, provided in Sections 768–797, D.C.Code 1929, T. 5, §§ 391–419, for dissolution of all corporations by judicial proceedings accompanied by a receivership. By Section 772, the District Court was authorized to enter a decree of dissolution, and Section 785 expressly prolonged the capacity of "such dissolved corporation" to be sued on accrued causes of action. Section 11 of the Act of 1916, 46 U.S.C.A. § 810, authorizing the incorporation of Fleet Corporation, however, expressly stated that the corporation "shall * * * stand dissolved" five years after the war, and provided for liquidation of its affairs by the Shipping Board. The corporate life was later extended, but nothing in subsequent legislation indicates an intent that dissolution would be conducted under the laws of the District of Columbia, as appellees contend. As noted below, the Act of 1936 also provides a complete method for liquidation of the corporation's debts aside from the ordinary machinery.

Nor is there anything in this action of Congress which violates any of plaintiffs' rights under the Fifth Amendment. The statute provides that "all existing contractual obligations of the dissolved corporation shall be assumed by the United States". The effect of this, of course, is to substitute the United States in the place

[14] Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 125, 58 S.Ct. 125, 127, 82 L.Ed. 147.

[15] Merchant Marine Act of 1920, supra, Sec. 2 (c), 46 U.S.C.A. § 862 (c).
[16] Sec. 204 (a), 46 U.S.C.A. § 1114(a).
[17] Sec. 203, 46 U.S.C.A. § 1113.

and stead of the Fleet Corporation. The delegation of authority to the Maritime Commission to defend pending suits was a proper and necessary provision for litigation between aggrieved persons and the Fleet Corporation then on the court dockets, and the provision that the United States would assume the obligations of the Fleet Corporation which were not then in litigation, affords such aggrieved persons a sufficient remedy, due process of law, and just compensation for any private property which has been taken for public use; and is wholly consistent with the prior passage by Congress of the Suits in Admiralty Act,[18] in which the United States substituted itself for the offending res in maritime causes of action. This provision has been held to furnish an exclusive remedy in admiralty against the United States and to preclude, after the passage of the act, the bringing of any libel in admiralty against any vessel or other property of the United States or actions at law in state or federal courts against the Fleet Corporation or other agents for the enforcement of such causes of action.[19]

■ We are, therefore, of opinion that the Act of 1936 not only dissolved the Fleet Corporation and was an express withdrawal of consent by the United States that suit might be thereafter brought against that dissolved corporation, but also furnished an exclusive forum, the Court of Claims,[20] in which suits growing out of the transactions of the dissolved corporation should thereafter be brought, and in which the United States, in assuming full responsibility, agreed to abide the outcome of the litigation.

Reversed and remanded, with instructions to dismiss the complaint.

---

[18] 41 Stat. 525, 46 U.S.C.A. § 741 et seq.

[19] Johnson v. United States Shipping Board Emergency Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451.

[20] Tucker Act (Claims), Mch. 3, 1887, 24 Stat. 505, 28 U.S.C.A. §§ 41 (20), 250, 251, etc.