242 F.2d 359
 UNITED STATES of America, Appellant,
v.
Howard A. McNINCH, d/b/a The Home Comfort Company, Rosalie
McNinch and Garis P. Zeigler, Appellees.
Frederick L. TOEPLEMAN, Appellant and Cross-Appellee,
v.
UNITED STATES of America, Appellee and Cross-Appellant.
CATO BROS., Incorporated, Wilfred R. Cato, William R. Cato,
and Magie L. Dunn(nee: Magie L. Stone), Appellants,
v.
UNITED STATES of America, Appellee.
 Nos. 7224, 7321, 7333.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 4, 1956.
Reargued Jan. 14, 1957.
Decided Feb. 28, 1957.
 
 William W. Ross, Atty., Dept. of Justice, Washington, D.C. (George Cochran Doub, Asst. Atty. Gen., N. Welch Morrisette, Jr., U.S. Atty., Columbia, S.C., and Melvin Richter, Atty., Dept. of Justice, Washington, D.C., on the brief), for appellant.
 E. W. Mullins and Edwin P. Gardner, Columbia, S.C. (Nelson, Mullins & Grier, Columbia, S.C., on the brief), for appellees.
 No. 7321.
 B. S. Royster, Jr., Oxford, N.C. (Frank W. Hancock, Jr., Oxford, N.C., on the brief), for appellant and cross-appellee.
 William W. Ross, Atty., Dept. of Justice, Washington, D.C. (George Cochran Doub, Asst. Atty. Gen., Julian T. Gaskill, U.S. Atty., Goldsboro, N.C., and Melvin Richter, Atty., Dept. of Justice, Washington, D.C., on the brief), for appellee and cross-appellant.
 No. 7333.
 Charles W. Laughlin and A. C. Epps, Richmond, Va. (Christian, Barton, Parker & Boyd, Richmond, Va., on the brief), for appellants.
 William W. Ross, Atty., Dept. of Justice, Washington, D.C. (George Cochran Doub, Asst. Atty. Gen., Lester S. Parsons, Jr., U.S. Atty., Norfolk, Va., and Melvin Richter, Atty., Department of Justice, Washington, D.C., on the brief), for appellee.
 Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District judge.
 PARKER, Chief Judge.
 
 
 1
 These are appeals from judgments in actions instituted under the Federal False Claims Act, R.S. §§ 3490, 5438, 31 U.S.C.A. § 231. In No. 7224 the action was grounded on false representations made in obtaining the guaranty by the Federal Housing Administration of loans made to defendants by a bank. Judgment was entered for defendants and the United States has appealed. See United States v. McNinch, D.C., 138 F.Supp. 711. In the other two cases, action was grounded on false representations made to the Commodity Credit Corporation for the purpose of obtaining loans on cotton. Judgment was entered in favor of the United States for the $2,000 forfeiture provided by statute as to a number of transactions and the defendants have appealed. The cases are considered together, as the controlling question in all of them is the applicability of the False Claims Act to claims against government corporations as distinguished from claims against the government itself or 'any department or officer thereof.'
 
 
 2
 In No. 7224 the facts are that two of the defendants were officers and one a salesman of an unincorporated home construction business. They presented to a bank, which was an approved FHA lending institution, eleven fraudulent FHA loan applications for the purpose of obtaining FHA-insured home improvement loans in behalf of home-owner customers with whom they had contracted to carry out home improvements. The bank made the loans, which were then insured by the FHA pursuant to Title I of the National Housing Act. 12 U.S.C.A. § 1701 et seq. Prior to the institution of this proceeding, two of the defendants pleaded guilty to violating 18 U.S.C. § 1010, which prohibits the making of false statements for the purpose of obtaining FHA-insured loans.
 
 
 3
 In No. 7321 the facts are that defendants were engaged in the cotton business. Desiring to obtain non-recourse loans on cotton which they purchased in the course of their business, they caused eighty-two producers' notes and loan agreements to be signed by producers of cotton and used them to obtain loans under the Cotton Loan Program from the Commodity Credit Corporation, pledging as security cotton belonging, not to the producers who signed the notes, but to the defendants. The holding of the court was that each note constituted a false claim under the statute and judgment was entered against the defendant Toepleman for the sum of $2,000 as to each note, or a total of $164,000, subject to a credit of $2,000. Defendant Toepleman paid 39 of the notes and redeemed the cotton thereunder. The remaining 43 notes were not paid on maturity and the cotton pledged to secure same was sold by the government at a loss of $6,733.97. Toepleman appealed from the judgment for $162,000 and the United States filed a cross appeal from the refusal of the judge to render judgment for double the amount of the $6,733.97 loss sustained on the sale of the cotton.
 
 
 4
 In No. 7333, the facts are that the defendants obtained loans on cotton from the Commodity Credit Corporation in 30 separate transactions embracing notes which contained the false representation that they were made by the producers of the cotton. Judgment was rendered against the defendants for $60,000, representing a forfeiture of $2,000 as to each transaction; and from this portion of the judgment defendants have appealed. Judgment was rendered in favor of defendants for $1,150.24 on a counterclaim relating to an entirely different matter, and from this portion of the judgment no appeal was taken.
 
 
 5
 The important question presented by all of the appeals is whether the forfeiture of $2,000 imposed by the False Claims Act applies where the claims are made, not directly against the government or against 'any department or officer' of the government, but against a corporation as a governmental agency. We think that, in the light of the language used in the statute, as well as in the light of legislative history, this question must be answered in the negative.
 
 
 6
 The authoritative text of the False Claims Act is to be found in Section 3490 of the Revised Statutes of 1878, which is as follows:
 
 
 7
 'Sec. 3490. Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the services of the United States, who shall do or commit any of the acts prohibited by any of the provisions of section fifty-four hundred and thirty-eight, Title 'Crimes,' shall forfeit and pay to the United States the sum of two thousand dollars, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit.'
 
 
 8
 This section has never been amended, although R.S. § 5438 has been amended. Prior to the amendment of R.S.s 5438, the pertinent portion of that section, incorporated by reference in R.S. § 3490, was as follows:
 
 
 9
 'Sec. 5438. Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person of officer in the civil, military, or naval services of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, * * * shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars.' (Italics supplied.)
 
 
 10
 In 1918, section 5438, then appearing as section 35 of the Criminal Code, was amended by adding to the list of those to whom it was made criminal to present a false claim 'any corporation in which the United States of America is a stockholder'. Like language was added to the description of the claim. 40 Stat. 1015. The purpose of the amendment was to extend the criminal provision of the section so as to protect government corporations, i.e. corporations in which the government was a stockholder and in reality the owner of the corporate business and property. See United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 and H.R.Report No. 668, 65th Cong.2d Sess. and 56 Cong.Rec. pp. 11, 118-11, 119. The section as amended was carried forward and reenacted as section 287 of Title 18 of the United States Code, making it a crime to present a false claim against 'The United States, or any department or agency thereof.' (Italics supplied.) This language, of course, makes the criminal statute applicable to false claims against government corporations, since 'agency' is defined in 18 U.S.C. § 6 as including 'any corporation in which the United States has a proprietary interest.'
 
 
 11
 There has been no amendment of the civil provisions contained in R.S. § 3490, extending their coverage to false claims against government corporations; and it is well settled that the incorporation of the terms of a statute by reference does not incorporate subsequent amendments of that statute. See Kendall v. United States, 12 Pet. 524, 625, 9 L.Ed. 1181; In re Heath, 144 U.S. 92, 12 S.Ct. 615, 36 L.Ed. 358; Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858. This has been held expressly with respect to the incorporation by R.S. § 3490 of the provisions of R.S. § 5438. United States ex rel. Kessler v. Mercur Corporation, 2 Cir., 83 F.2d 178, 180, certiorari denied 299 U.S. 576, 57 S.Ct. 40, 81 L.Ed. 424. In the case cited, the Court of Appeals of the Second Circuit, speaking through Judge Augustus N. Hand, said:
 
 
 12
 'While section 5438 was amended, repealed, and finally since the time when it was referred to in section 3490 superseded by a broader enactment (18 U.S.C.A. § 80), it stands, so far as section 3490 is concerned, as it was written when incorporated by reference. It is quite immaterial that the superseding act alone appears in the United States Code, for the Code only embodies a prima facie statement of the statutory law. It is well settled that where a statute incorporates another, and the one incorporated is thereafter amended or repealed, the scope of the incorporating statute remains intact and 'no subsequent legislation has ever been supposed to affect it.' Kendall v. United States, 12 Pet. 524, 625, 9 L.Ed. 1181; In re Heath, 144 U.S. 92, 93, 94, 12 S.Ct. 615, 36 L.Ed. 358.'
 
 
 13
 See also United States ex rel. Boyd v. McMurtry, D.C.W.D.Ky., 5 F.Supp. 515, and Olson v. Mellon, D.C.W.D.Pa., 4 F.Supp. 947, adopted as opinion of Court of Appeals of Third Circuit, United States ex rel. Knight v. Mellon, 71 F.2d 1021.
 
 
 14
 The question, then, is narrowed to this: Is a claim against a government corporation, which acts as an agency of the government, a claim against the government of the United States or a department or officer thereof as required by R.S. § 5438 as a condition of liability at the time of the adoption of R.S. § 3490? The answer is manifestly that it is not such a claim. A government corporation, even though acting as an agency of the government is not the government, nor is it a department or officer of the government. As said by Judge Patterson in United States ex rel. Salzman v. Salant & Salant, D.C., 41 F.Supp. 196, 197: 'a corporation which is an agency of the government is not the government or a department or officer of it'. See also Pierce v. United States, 314 U.S. 306, 62 S.Ct. 237, 86 L.Ed. 226 and Lindgren v. United States Shipping Board Merchant Fleet Corporation, 4 Cir., 55 F.2d 117, 120, certiorari denied 286 U.S. 542, 52 S.Ct. 499, 76 L.Ed. 1280. In the case last cited this court said:
 
 
 15
 'Plaintiff contends, however, that this suit and the former suit are virtually against the same defendant because the United States owns the stock of the Fleet Corporation and the Fleet Corporation is an agency of the United States. This position cannot be sustained. The United States is a sovereign power representing in its corporate capacity the people of the country and immune from suit, except as it may give its consent thereto. The Fleet Corporation is a private corporation of the District of Columbia, created under the laws of the United States, with power to sue and be sued in the same manner as other corporations. Sloan Shipyards Corp. v. U.S. Shipping Board Emergency Fleet Corporation, 258 U.S. 549, 568, 42 S.Ct. 386, 66 L.Ed. 762; (United) (States) Shipping Board Merchant Fleet Corporation v. Harwood, 281 U.S. 519, 526, 50 S.Ct. 372, 74 L.Ed. 1011. Although the United States owns its stock, it is a distinct entity just as other corporations are distinct from their stockholders. A suit against it is not a suit against the United States, and a suit against the United States is not a suit against it.'
 
 
 16
 There is nothing to the contrary in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 384, 87 L.Ed. 443. The fraud there was perpetrated not against a government corporation but against the government itself, the decision being that R.S. § 5438 covered the case of one who knowingly caused the government to pay claims grounded in fraud. The gist of the decision is contained in the following quotation, viz.:
 
 
 17
 'While payment itself, in the sense of the direct transferring of checks, was done in the name of local authorities, monthly estimates for payment were submitted by the respondents to the local sponsors on P.W.A. forms which showed the government's participation in the work and called attention to other federal statutes prohibiting fraudulent claims. It was a prerequisite to respondents' payment by the local sponsors that these estimates be filed, transmitted to, and approved by, the P.W.A. authorities. Payment was then made from a joint construction bank account containing both federal and local funds. The work was done under constant federal supervision.
 
 
 18
 'The government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive. By their conduct, the respondents thus caused the government to pay claims of the local sponsors in order that they might in turn pay respondents under contracts found to have been executed as the result of the fraudulent bidding. This fraud did not spend itself with the execution of the contract. Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid by the P.W.A. into the joint fund for the benefit of respondents. The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal-- payment of government money to persons who had caused it to be defrauded.' (Italics supplied.)
 
 
 19
 The fact that the government corporations here involved were not in existence at the time of the enactment of R.S. § 5438 would not be controlling if the language of the section were broad enough to encompass claims against such corporations; but, as we have seen, the language is not broad enough to cover such claims, however liberal an interpretation be placed upon it. And in this connection we are bound to give consideration to the fact that the language of R.S. § 3490 was not amended to cover such claims when amendments were made in the language of R.S. § 5438 to cover the making of fraudulent claims against government corporations. Not only is this true, but it is true also that, in subsequent legislation passed to protect government corporations against false and fraudulent claims, criminal penalties were specifically provided but no provision was made for civil penalties or forfeitures. See 18 U.S.C. § 1010 and 1014. If it were the intent of Congress that presentation of false claims against such corporations be redressed by actions for civil penalties or forfeitures, it would have been easy enough to have so provided when the statutes were enacted providing the criminal penalties.[1] Such action by Congress would certainly be more logical and seemly than for the courts to give a forced interpretation to a statute passed three quarters of a century ago when government corporations had not been dreamed of.
 
 
 20
 Another ground for holding the statute not applicable in case No. 7224 is that the obtaining of the guaranty of loan was not the making of a claim within the meaning of the statute. United States v. Tieger, 3 Cir., 234 F.2d 589, certiorari denied 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237; United States v. Cochran, 5 Cir., 235 F.2d 131, certiorari denied 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237.
 
 
 21
 For the reasons stated, the decision in No. 7224 will be affirmed, the decision in No. 7321 will be reversed in so far as it gives judgment against defendants and affirmed in so far as it denies recovery of damages under the statute, and the decision in No. 7333 will be reversed in so far as it gives judgment against defendants.
 
 
 22
 No. 7224, Affirmed.
 
 
 23
 No. 7321, Reversed in Part and Affirmed in Part.
 
 
 24
 No. 7333, Reversed in Part.
 
 
 
 [1]
 In such case, civil penalties would properly have been made recoverable by the corporation, not by the United States. The fact that the forfeiture under R.S. § 3490 must be recovered in a suit by the United States, and not by the government corporation to which the false claim has been presented, is an additional argument that false claims against such corporations are not comprehended by the statute