UNITED STATES of America,
Appellant,

v.

CATO BROTHERS, INC., Wilfred R. Cato, William R. Cato, and Magie L. Dunn (nee Magie L. Stone), Appellees.

No. 7967.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 12, 1959.

Decided Dec. 14, 1959.

---

**154**

John G. Laughlin, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., John M. Hollis, U. S. Atty., Norfolk, Va., and Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Charles W. Laughlin and A. C. Epps, Richmond, Va. (Christian, Barton, Parker & Boyd, Richmond, Va., on the brief), for appellees.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

SOPER, Circuit Judge.

This appeal is taken from an order of the District Judge whereby the defendants were released from the obligation of a judgment to pay to the United States the sum of $60,000 on condition that they pay to the United States the sum of $20,000. The judgment for $60,000 had previously been affirmed by this court and the United States appeals on the ground that the District Judge had no power to amend the judgment in this way.

On July 31, 1956, the District Court awarded the United States $2,000 upon each of thirty false claims submitted by the defendants to the Commodity Credit Corporation whereby they obtained loans on cotton in thirty separate transactions and gave notes which contained the false representation that the notes were made by the producers of the cotton. The suit was based on the civil False Claims Act, 31 U.S.C.A. § 231, which provides in effect that any person not in the military or naval service who makes any claim for payment upon or against the Government of the United States or any department or officer thereof, knowing the claim to be false, fictitious or fraudulent, shall forfeit and pay to the United States the sum of $2,000 and, in addition, double the amount of damages which the United States may have sustained by reason of the doing of such act. The judgment of the District Court for $2,000 on each of the thirty false claims was reversed by this court on appeal (United States v. McNinch, 4 Cir., 1957, 242 F.2d 359) on the ground that a claim against the

Commodity Credit Corporation is not a claim against the United States since a government corporation is not a department of the government. In reaching this conclusion, we were influenced by the legislative history which showed that the criminal False Claims Act, 18 U.S.C. § 287, which was originally directed against false claims against or upon the Government of the United States or any department or officer thereof, had been specifically amended to add to this list "any corporation in which the United States of America is a stockholder", whereas the civil False Claims Act had not been so amended. The Supreme Court, however, reversed this holding, sub nomine United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001, a companion case considered by us together with the case at bar. The Supreme Court held that a claim against the Commodity Credit Corporation is a claim against the Government of the United States or any department or officer thereof within the meaning of the provisions of the civil False Claims Act.

On remand, the case was reargued in this court, Toepleman v. United States (Cato Bros., Inc. v. United States), 4 Cir., 263 F.2d 697, and additional contentions on behalf of the defendants were considered. These contentions were based on the ground that the United States had not sustained any calculable damages by reason of the actions of the defendants and therefor the imposition of such a plurality of penalties, that is, thirty in the pending case and eighty-two in the companion Toepleman case, was unconstitutional. We rejected the contention on the ground that damages are always suffered by the United States when a false claim is presented and that the Government may protect itself against this eventuality even though the damages are not nicely ascertainable, so that even when the penalty is multiplied by a plurality of impositions, the total amount of the forfeiture cannot be justly regarded as a taking without just cause or due process. Accordingly the judgment of the District Court in favor of the United States was affirmed in Cato Bros., Inc. v. United States, 4 Cir., 263 F.2d 697, and subsequently a petition for writ of certiorari was denied by the Supreme Court, 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978.

Ordinarily this would have been an end of the litigation, but when the case was returned to the District Court the defendants reopened the controversy by moving to vacate the judgment which had just been affirmed. The motion was based on Rule 60 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which empowers the District Court (a) to correct clerical mistakes in judgments and (b) to relieve a party from a final judgment for the following reasons amongst others: (1) mistake, inadvertence or excusable neglect, (2) newly discovered evidence, (3) fraud or misconduct of the adverse party, (4) invalidity, (5) satisfaction or discharge, or (6) "any other reason justifying relief from the operation of the judgment".

The District Judge realized that the problem presented by the motion was a novel one and that no case directly in point could be found; but he finally reached the conclusion that discretion to modify the judgment by reducing the amount thereof from $60,000 to $20,000 in the interest of justice was conferred upon him by the power granted in subsection (6) of Rule 60(b) quoted above.

In his opinion the judge called attention to the general principle that the law abhors a forfeiture; and he found analogies to the situation in the case at bar in the power conferred upon the court by Rule 46(f)(2), (4) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., to set aside a bail forfeiture in whole or in part, if justice does not require an enforcement of the forfeiture; and also in the power conferred upon the court by 18 U.S.C. § 3617 to remit forfeitures in libel cases instituted by the United States for the forfeiture of vessels or other conveyances used in violation of the Internal Revenue laws. See Continental Casualty Co. v. United States, 314 U.S. 527, 528, 62 S.Ct. 393,

86 L.Ed. 426; United States v. One 1936 Model Ford, etc., Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249.

Coming to the merits of the case, the judge expressed the opinion that "the enforcement of the forfeiture would penalize the defendants far beyond the degree commensurate with their culpability"; and he found support for his views in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, where he said that the Supreme Court expressed the opinion that the statute is remedial and not criminal and indicated the view that the remedy should be commensurate with the gain. In reaching his conclusion that the amount of the forfeiture should be reduced to $20,000, the judge took into consideration that the defendants had received a profit of $8,208.-39 but, on the other hand, had been subjected to the expense of a prolonged and costly litigation in the representation of counsel, court costs and so forth, so that the payment of $20,000 would constitute a penalty "fully commensurate with the actions of the defendants and the gains realized by them". He also concluded that the defendants should not be penalized to the extent of saving the Government harmless from the losses which it had incurred by the failure of the Commodity Credit Corporation either to sell the cotton for a profit or to accept repayment by the defendants of the amount of the loans. In short, the judge construed Rule 60(b)(6) as empowering him to take into consideration all of the circumstances of the case and to impose such a penalty as he thought just under the circumstances, free from the specific provisions of the statute which prescribe a penalty of $2,000 for each false claim presented to the Government.

There can be no doubt that the District Judge gave careful and conscientious consideration to the circumstances of the case in order to do justice between the parties as he saw it; but we cannot find any support for the theory that he was clothed with power by Rule 60 to substitute his judgment of what was the appropriate penalty for the wrongful conduct of the defendants in place of the penalty prescribed by the act of Congress. The analogies to the remission of forfeitures incurred by reason of failure to comply with conditions of bail bonds or in the confiscation of property used in violation of the Internal Revenue laws are not helpful because the relevant statutes expressly confer discretion upon the district judge in these cases to revoke or modify the forfeitures. Nor does United States ex rel. Marcus v. Hess, supra, suggest in any way that the district judge has the power to mitigate what appear to him to be the acerbities of the statute. In that case the Court discussed the contention that persons, who had presented false claims against the United States and had been fined $54,000 on a plea of nolo contendere to the crime of conspiring to defraud the United States (18 U.S.C. § 286), were subjected to double jeopardy when they were also ordered to pay the sum of $203,000 for double damages and $112,000 for fifty-six violations in a proceeding under the civil false claims statute. In overruling the contention, the Court pointed out that the required payment of a lump sum and double damages would do no more than afford the Government complete indemnity for the injury done it (317 U.S. at page 549, 63 S.Ct. at page 386) and that, in any case, Congress might have provided, as it did in the antitrust laws, for the recovery of three-fold damages (317 U.S. at page 550, 63 S.Ct. at page 387); and finally, the Court said (317 U.S. at page 551, 63 S.Ct. at page 388): "We think the chief purpose of the statutes here was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be completely whole". We have here no intimation that the judge may disregard or modify the statutory penalty if it seems to him to be too severe.

It has never been held and it is not now contended that a federal judge, in a case under a federal statute which prescribes penalties for wrongful conduct,

has the power, after violation of the statute has been established, to impose any penalty other than that named in the law; and it would be contrary to reason to hold that after a lawful judgment has been entered in accordance with the statute the judge is then endowed by the rule with the extraordinary power, which he did not previously possess, to disregard the will of Congress.

The conclusive answer to the problem, moreover, is that if the rule were given such an interpretation it would be invalid as beyond the power of the Supreme Court of the United States. The act of Congress which granted to the Supreme Court the power to prescribe rules of civil procedure for the district courts, 28 U.S.C. § 2072, expressly provided that such rules shall not abridge, enlarge or modify any substantial right; and there can be no doubt that a rule which conferred upon the district judge the power to disregard an act of Congress would not only impair the legislative powers granted to Congress by the Constitution but the right and duty of the Government in the exercise of its executive powers to enforce the acts of Congress. We are dealing here not merely with the incidental modification of substantial rights that sometimes occurs in the enforcement of rule of practice and procedure, but with the fundamental rights of parties which may be enforced but may not be modified by the rules of procedure. See Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 444–445, 66 S.Ct. 242, 90 L.Ed. 185; Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479; United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058; Hart v. Knox County, Tenn., 6 Cir., 171 F.2d 45.

Full scope can be given to subsection (6) of Rule 60(b) by applying it in a liberal spirit in accordance with the principle of *ejusdem generis* to situations in the same general class as those enumerated in the five preceding subsections. This was done in Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, where a default judgment setting aside an order admitting Klapprott to citizenship was vacated under the power given to the court in subsection (6) of Rule 60(b), although he had not filed his motion to vacate the judgment within the time prescribed by the rule in cases of excusable neglect. The Court was of the opinion that he was rendered well-nigh powerless by confinement in prison and other circumstances so that his default was caused by the extraordinary circumstances of his disability rather than merely by excusable neglect, and that he was entitled to relief under the general terms of subsection (6) for which no time limitation was prescribed. In effect, the Court held that subsection (6) should not be limited to relief ordinarily allowable under common-law practice but should be invoked whenever such action was appropriate to accomplish justice. In like manner, relief was granted from a judgment in Tozer v. Charles A. Krause Milling Co., 3 Cir., 189 F.2d 242, and liberal scope has been given to subsection (6) in striking default judgments in such cases as Patapoff v. Vollstedt's, Inc., 9 Cir., 267 F.2d 863.

In general, relief from judgments has been given under subsection (6) in cases where the judgment was obtained by the improper conduct of the party in whose favor it was rendered or resulted from the excusable default of the party against whom it was directed under circumstances not covered by subsections (1) to (5) which, in the opinion of the court, required the application of subsection (6) in order that the case be tried on its merits and justice be done; but in these instances the substantial rights of the parties in the matter in controversy were not affected. See 3 Barron and Holtzoff, Federal Practice and Procedure, c. 11, § 1329, p. 417 et seq.

Since the alteration of the judgment in the pending case was not authorized by the rule, the District Judge violated the principle that a lower court has no power or authority to deviate from the mandate issued by an appellate court but is bound thereby and cannot reopen questions which the mandate lays to rest, Briggs v. Pennsylvania R. Co., 334 U.S. 304, 68

S.Ct. 1039, 92 L.Ed. 1403. The judgment of the District Court will therefore be reversed and the case remanded with direction to reinstate the prior judgment in accordance with the previous mandate of this court.

Reversed and remanded.